**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LA DOLCE VITA FINE DINING COMPANY
LIMITED and LA DOLCE VITA FINE DINING
GROUP HOLDINGS LIMITED,

              Petitioners,

       - v. -

ZHANG LAN, GRAND LAN HOLDINGS
GROUP (BVI) LIMITED, QIAO JIANG LAN
DEVELOPMENT LIMITED f/k/a/ SOUTH
BEAUTY DEVELOPMENT LIMITED, and
METRO JOY INTERNATIONAL LLC,

           Respondents,

Case No.: 1:21-cv-03071-LAK-KNF

**ECF Case**

---

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PETITIONERS' MOTION TO CONFIRM FOREIGN ARBITRAL AWARDS,**
**FOR ENTRY OF JUDGMENT, AND FOR THE APPOINTMENT**
**OF A RECEIVER TO SELL ATTACHED PROPERTY**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.   Petitioners' Action Should Be Dismissed For Lack of Jurisdiction ................................. 4

II.   Petitioners' Action Should Be Dismissed For Improper Venue ....................................... 9

III.   Petitioners' Action Should Be Dismissed On Grounds Of *Forum Non Conveniens* .... 11

    A.   Petitioners' Choice of Forum Merits Little Deference ............................................. 12

    B.   An Adequate Alternative Forum Exists .................................................................... 13

    C.   The Private And Public Interest Factors Favor Dismissal ........................................ 14

IV.   Confirmation Should Be Denied Under The New York Convention ............................ 16

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

*Cases*

*3573522 Canada Inc. v. N. Country Natural Spring Water, Ltd.*,
 210 F.R.D. 544 (E.D. Pa. 2002) ............................................................................... 10

*Anhui Provincial Imp. & Exp. Corp. v. Hart Enters. Int'l, Inc.*
 No. 96 CIV. 128 (LAK), 1996 WL 229872 (S.D.N.Y. May 7, 1996) ....................... 8

*Bank of Am. v. Apollo Enter. Sols.*, LLC,
 No. 10 Civ. 5707(DLC), 2010 WL 4323273 (S.D.N.Y. Nov. 1, 2010) .................... 7

*Bell v. Koss*,
 17 Civ. 7762 (AT) (DCF), 2020 WL 4570439 (S.D.N.Y. Aug. 7, 2020) ............... 7, 8

*Crescendo Mar. Co. v. Bank of Commc'ns Co., Ltd.*,
 15 Civ. 4481 (JFK), 2016 WL 750351 (S.D.N.Y. Feb. 22, 2016) .......................... 13

*E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*,
 No. 08 Civ. 4247(LTS)(FM), 2008 WL 2940583 (S.D.N.Y. July 30, 2008) .......... 6

*Encyc. Universalis S.A. v. Encyc. Britannica, Inc.*,
 403 F.3d 85 (2d Cir. 2005) .......................................................................... 3, 16, 19

*Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*,
 665 F.3d 384 (2d Cir. 2011) ............................................................................. 14, 15

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
 582 F.3d 393 (2d Cir. 2009) ..................................................................................... 4

*Glencore AG v. Bharat Aluminum Co.*,
 No. 10 Civ. 5251(SAS), 2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010) ................. 3, 7

*Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
 No. 11 Civ. 420(RJH), 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) ....................... 4

*Harbour Victoria Inv. Holdings Ltd. v. Chawla*,
 No. 15 CV 3212 (S.D.N.Y. May 15, 2015) ........................................................... 5, 6

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
 158 F.Supp.2d 377 (S.D.N.Y. 2001) ........................................................... 14, 15, 16

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
 311 F.3d 488 (2d Cir. 2002) ........................................................................... passim

*Linsen Int'l Ltd. v. Humpuss Sea Transport Pte Ltd*,
 No. 09 Civ. 10393(GBD), 2011 WL 1795813 (S.D.N.Y. Apr. 29, 2011) ............. 11

*Lu v. Air China Int'l Corp.*,
  No. CV 92-1254 (RR), 1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) ........................ 13, 15, 16

*Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.*,
  965 F.Supp.2d 308 (S.D.N.Y. 2013) ..................................................................... 3

*Orion Shipping & Trading Co. v. E. States Pet. Corp. of Pan. S.A.*,
  312 F.2d 299 (2d Cir. 1963) ............................................................................... 3

*Ottley v. Schwartzberg*,
  819 F.2d 373 (2d Cir. 1987) ............................................................................... 3

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ...................................................................................... 12, 13

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ......................................................................... 11, 12, 15

*Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*,
  19-CV-5903 (CS), 2019 WL 5884558 (S.D.N.Y. Nov. 8, 2019) .............................. 8

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ...................................................................................... 12, 13

*Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*,
  12-CY-4502 (ALC), 2016 WL 5793399 (S.D.N.Y. Sept. 30, 2016) ....................... 11

*SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*,
  18-CV-8408 (VEC) (BCM), 2020 WL 6323938 (S.D.N.Y. July 30, 2020) ............... 11

*SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*,
  18-CV-8408 (VEC), 2020 WL 5253515 (S.D.N.Y. Sept. 3, 2020) ......................... 11

*Vance Bioenergy Sdn. Bhd. v. World Energy Alt., LLC*,
  08 Civ. 9330 (LAK), 2010 WL 11595107 (S.D.N.Y. Jan. 18, 2010) ....................... 8

### Statutes

28 U.S.C.A. § 1391 (2011) ..................................................................................... 10

9 U.S.C.A. § 204 (1970) .................................................................................... 9, 10

### Rules

Fed. R. Civ. P. 56 ................................................................................................... 8

***Other Authorities***

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   June 10, 1958, 21 U.S.T. 2517................................................................................... passim

Zhang Lan ("Zhang"), Grand Lan Holdings Group (BVI) Limited ("GL Holdings"), and Qiao Jiang Lan Development Limited ("QJL Development") (collectively, "Respondents") respectfully submit this memorandum of law in opposition to Petitioners' Motion to Confirm Foreign Arbitral Awards, for Entry of Judgment, and for the Appointment of a Receiver to Sell Attached Property (the "Motion").

## PRELIMINARY STATEMENT

This is an action brought by foreign petitioners to confirm foreign arbitral awards issued in foreign arbitral proceedings against foreign respondents in connection with a foreign commercial dispute that arose halfway around the world.  None of the parties to the arbitration is alleged to be a New York resident or domiciliary, and the underlying commercial dispute—involving the acquisition by two Cayman Islands entities of a majority stake in a chain of restaurants in China—has no nexus to New York.

So what brings this action to the Southern District of New York?  One thing only: Petitioners believe that they have located a condominium apartment in New York City that can be sold in partial satisfaction of the foreign arbitral awards.  The difficulty for Petitioners is that the apartment is not owned by any of the arbitral respondents—not by Zhang or by GL Holdings or by QJL Development.  Indeed, by Petitioners' own account, title to the apartment is held by Metro Joy International LLC ("Metro Joy"), a non-party to the arbitration that Petitioners have tacked on as a respondent in this action.  But Metro Joy has no place in this proceeding, for there is no getting around the fact that the foreign arbitral awards that Petitioners seek to have confirmed here were not entered against Metro Joy and cannot be enforced against Metro Joy.

This fundamental disconnect is fatal to Petitioners' action.  The condominium apartment is Petitioners' only purported foothold in this jurisdiction, and its owner was not even a party to the arbitration.  To bridge this gap, Petitioners go to elaborate lengths to contrive a narrative in

which Zhang—the only Respondent against whom Petitioners seek a judgment—is purportedly the "true owner" of the condominium apartment, either through alleged links to the apartment or through alleged links to Metro Joy.  Petitioners seek to use this proceeding as a vehicle for a fact-intensive inquiry into far-flung questions of ownership and corporate identity, freighting their pleadings with extraneous allegations and cluttering the docket with a range of documents—from property deeds to insurance applications to financial records indicating funds transfers from one non-party to another—that bear no relation whatever to the arbitration proceeding or the underlying commercial dispute.  Such allegations and documents are not properly considered in a confirmation action, which should be a straightforward, streamlined proceeding narrowly focused on the propriety of the arbitral awards.  In any event, none of the allegations and none of the proffered evidence supports Petitioners' contention that Zhang may be treated as the owner of the apartment for purposes of this proceeding.

        Indeed, Petitioners' house of cards does not stand up to even superficial examination.  As a threshold matter, there is no basis for the exercise of jurisdiction over any of the Respondents.  Petitioners' confused and conclusory allegations regarding Zhang's purported control over the apartment (or its owner) fall well short of supporting the exercise of jurisdiction—whether *in personam* or *quasi in rem*—over Zhang or, for that matter, any of the other Respondents.  Petitioners also fail to address the most basic facts relevant to Metro Joy, the acknowledged owner of the apartment.  It is particularly notable that Petitioners do not contend, and certainly make no attempt to prove, that Zhang or any of the other Respondents is a manager or member of Metro Joy.  In and of itself, this failure of evidence dooms Petitioners' effort to treat Zhang as the owner of the apartment.

The Southern District of New York is, moreover, not a proper venue for this action, nor is it a suitable forum for consideration of foreign arbitral awards that have no ties to New York. And even if this Court were to reach the substantive question of confirmability, the failure of the arbitral authority to adhere to its own rules regarding the composition of the arbitral tribunal would warrant denial on the merits of Petitioners' request for confirmation.  As discussed in greater detail below, Petitioners' action should be dismissed in its entirety.

## LEGAL STANDARD

An action to confirm an arbitral award is a summary proceeding in which the role of the district court is "strictly limited."  *Encyc. Universalis S.A. v. Encyc. Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987) ("Actions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated.").  Because confirmation proceedings are "not intended to involve complex factual determinations," *Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.*, 965 F.Supp.2d 308, 311 (S.D.N.Y. 2013), a proceeding to confirm an arbitral award is not suitable for the adjudication of fact-intensive issues such as questions of ownership or alter ego liability.  *See Orion Shipping & Trading Co. v. E. States Pet. Corp. of Pan. S.A.*, 312 F.2d 299, 301 (2d Cir. 1963) (A court considering a petition to confirm a foreign arbitral award should not be "confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego'."), *cert. denied*, 373 U.S. 949 (1963); *see also Glencore AG v. Bharat Aluminum Co.*, No. 10 Civ. 5251(SAS), 2010 WL 4323264, at *5 (S.D.N.Y. Nov. 1, 2010) ("An action to confirm a foreign arbitral award is not the proper occasion to assert an alter ego theory for liability.").

3

**ARGUMENT**

**I.      Petitioners' Action Should Be Dismissed For Lack of Jurisdiction**

Petitioners' first stumbling block is jurisdictional.  In order to hear a petition to confirm a

foreign arbitral award, a court "must have *in personam* or *quasi in rem* jurisdiction over the party

ordered to pay."  *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11 Civ.

420(RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012); *see also Frontera Res. Azer. Corp.*

*v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 398 (2d Cir. 2009).  Petitioners here have

pleaded no facts that would establish *in personam* or *quasi in rem* jurisdiction with respect to any

one of the Respondents.  In fact, Petitioners do not even ask this Court to exercise personal

jurisdiction over Respondents and instead rely exclusively on a theory of *quasi in rem*

jurisdiction, advanced solely as to Zhang and premised entirely on the existence in New York

City of a certain condominium apartment:  Apartment 39A at the Baccarat Hotel & Residences

(the "Apartment").  *See* Pet. ¶¶ 1(ii), 11, 15, 29.[1]

The fundamental problem with Petitioners' jurisdictional theory is obvious from the

pleadings:  *Quasi in rem* jurisdiction is rooted in ownership, and according to Petitioners' own

allegations, the Apartment was and is owned not by Zhang, but by *Metro Joy*.[2]  Thus, according

to Petitioners, it was Metro Joy, not Zhang, that executed the agreement to purchase the

Apartment; and it was Metro Joy, not Zhang, that purchased the Apartment; and it was Metro

---

[1] In their brief, Petitioners suggest in passing that this Court may have "personal jurisdiction over Zhang," while nevertheless acknowledging that the relief they seek is "all grounded in the Court's quasi-in-rem jurisdiction over the Apartment and its contents."  *See* Pet. Mem. 2, 15-16 (advising the Court that it "need not . . . make any determinations" as to "personal jurisdiction over Zhang").  The Petition itself relies exclusively on *quasi in rem* jurisdiction, and in any event, Petitioners have not pleaded any facts to support the exercise of personal jurisdiction over Zhang (or the other Respondents).

[2] An unaccountably large number of Petitioners' allegations relate to Apartment 21B at the Baccarat Hotel & Residences, an altogether different apartment and one that was allegedly purchased, not by Metro Joy or by Zhang or by any other party to this action, but by Metro Joy Management LLC.  *See* Pet. ¶¶ 30, 31(iii), 32(x)-(xiii), (xviii)-(xx).  According to Petitioners, Apartment 21B was sold to a third party in early 2020, *see id.* ¶¶ 32(xx), 33, and thus cannot under any circumstances serve as a predicate for *quasi in rem* jurisdiction in this proceeding.

Joy, not Zhang, that took out a mortgage on the Apartment; and it is Metro Joy, not Zhang, that holds title to the Apartment. *See* Pet. ¶ 14 ("[T]itle to the Apartment is in the name of Metro Joy"), 30 (Apartment "purchased in Metro Joy's name"), 31(iv) ("Metro Joy executed a contract to purchase the Apartment . . . ."), 31(vi) ("Metro Joy . . . purchased the Apartment for $10.25 million" and had "taken out a $5.125 million mortgage on the Apartment."); *see also* Pet. Mem. at 10 ("Metro Joy executed a contract to purchase the Apartment . . . ."; "Metro Joy . . . . purchased the Apartment for $10.25 million . . . .").[3] As if to drive the point home, Petitioners have submitted a document, described as the "Apt. 39A Deed," in which Metro Joy is repeatedly identified as the owner of the Apartment.[4]

How then, can a condominium apartment purchased and owned by Metro Joy establish *quasi in rem* jurisdiction with respect to Zhang? The short answer is that it can't, and certainly not on the basis of the conclusory allegations made by Petitioners here.

The case of *Harbour Victoria Inv. Holdings Ltd. v. Chawla* is instructive. There, a petitioner seeking to confirm a foreign arbitral award argued, like Petitioners here, that the exercise of *quasi in rem* jurisdiction could be predicated on the existence in New York of a certain condominium apartment. The problem for the petitioners in *Harbour Victoria*, as for Petitioners here, was the question of ownership. As the Court stated:

---

[3] As for GL Holdings and QJL Development, Petitioners allege that they "do not appear to have an ownership interest in or control over the Apartment other than as the alter egos of Zhang." *See* Pet. ¶ 15; *see also* Pet. Mem. at 3 n.2. Petitioners appear to have abandoned any argument that this Court has personal or *quasi in rem* jurisdiction over these entities and, indeed, do not seek judgment against GL Holdings or QJL Development. *See* Pet. ¶ 15. Petitioners have alleged no facts that would subject GL Holdings or QJL Development to personal or *quasi in rem* jurisdiction in this Court, and beyond the bare allegation that both entities are "100% owned by Zhang," *see id.* ¶¶ 5-6, 13, Petitioners do not even attempt to allege an alter ego relationship with Zhang (much less with Metro Joy).

[4] *See* Declaration of Steven Feigenbaum ("Feigenbaum Decl.") ¶ 21(iv), *La Dolce Vita Fine Dining Co. v. Zhang*, No. 21-cv-03071-LAK-KNF, ECF No. 10 (S.D.N.Y. Apr. 9, 2021); Feigenbaum Decl., Ex. 14 (including a deed cover page identifying Metro Joy as the "Grantee / Buyer," a "Unit Deed" executed by Metro Joy and identifying Metro Joy as the "Grantee," a "Real Property Transfer Report" identifying Metro Joy as the "Buyer," an affidavit of smoke detector compliance, executed by Metro Joy as "Grantee," and an unexecuted "Customer Registration Form for Water and Sewer Billing," identifying Metro Joy as the owner).

> Petitioner's attempt to justify quasi in rem attachment of the . . . apartment fails
> for the further reason that it has tendered no proof that the apartment or any other
> identifiable property located in New York even belongs to any of the respondents.

Declaration of Eric B. Fisher, Ex. A (Transcript of Proceedings 8:1-5, ECF No. 46, *Harbour Victoria Inv. Holdings Ltd. v. Chawla*, No. 15 CV 3212 (S.D.N.Y. May 15, 2015)).  The Court explained that it was not enough to raise "potentially intriguing questions" about the respondents' potential "relationship to the entity that holds title to the apartment."  *Id*. at 8:7-13.  What was needed and lacking was "proof of ownership or control."  *Id*.

Petitioners have proffered no such proof here.  Instead, Petitioners rely on unsupported innuendo, alleging in conclusory fashion that Zhang "effectively owns" the Apartment, *see* Pet. ¶¶ 11, 29, or that Zhang has (or had) "full control" over it.  *See id*. ¶¶ 11, 14, 29.[5]  But these unsupported allegations of "control" or "effective ownership" are no better than the "potentially intriguing questions" that Judge Swain rejected as wholly inadequate in *Harbour Victoria*.  They do not suffice as a basis for *quasi in rem* jurisdiction, and Petitioners have offered no authority to the contrary.  *See E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, No. 08 Civ. 4247(LTS)(FM), 2008 WL 2940583, at *3 (S.D.N.Y. July 30, 2008) (denying confirmation of attachment order and vacating attachment of assets undisputedly owned by non-party to arbitration).

The Petition also contains conclusory allegations that Metro Joy is a "shell company," suggesting that Petitioners may be seeking to advance some kind of alter ego theory.  *See* Pet. ¶¶ 14, 31, 33.  However, if Petitioners intend to premise their argument for *quasi in rem* jurisdiction on an alter ego theory, their pleadings fall decidedly short.  In the case of *Glencore*

---

[5] Petitioners' allegations with respect to Zhang's purported control over the Apartment are not only conclusory, but they are also inconsistent.  Petitioners allege in the present tense that Zhang "has full control" over the Apartment, *see* Pet. ¶ 11, but three paragraphs later, Petitioners allege that Zhang lost "full control" of the Apartment when she allegedly "abandoned it after learning of the Attachment Order . . . ."  *Id*. ¶ 14.

*AG v. Bharat Aluminum Co.*, the court held, in the context of an action to confirm a foreign arbitral award, that a finding of alter ego jurisdiction required consideration of "(1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies exercised by the parent." *Glencore*, 2010 WL 4323264, at *5 (citation and internal quotation marks omitted); *see also Bell v. Koss*, 17 Civ. 7762 (AT) (DCF), 2020 WL 4570439, at *4 (S.D.N.Y. Aug. 7, 2020); *Bank of Am. v. Apollo Enter. Sols.*, LLC, No. 10 Civ. 5707(DLC), 2010 WL 4323273, at *4-5 (S.D.N.Y. Nov. 1, 2010) (setting forth ten factors to "determine whether one entity is merely a shell for another").

Petitioners' allegations do not begin to support a finding that Metro Joy is Zhang's alter ego. The conclusory assertion that Zhang "created" Metro Joy, *see* Pet. ¶¶ 14, 31, 33, is rank conjecture, ungrounded in any alleged facts and unsupported by any of Petitioners' proffered documents, as Petitioners all but admitted in their petition for attachment, where they alleged only a "strong probability" that Zhang had created Metro Joy. *See* Feigenbaum Decl., Ex. 6 (Attachment Petition ¶ 16(ii)).[6] The allegation that Metro Joy is "controlled' by Zhang, *see* Pet. ¶¶ 7, 14, is similarly conclusory and without support in Petitioners' proffered documents.[7] Even

---

[6] Petitioners allege that Metro Joy was incorporated under the laws of New York and was registered as a domestic limited liability company, *see* Pet. 7, 31(i), but Petitioners provide no further details (much less details suggesting that Zhang had a hand in the creation or registration of the company), and the Division of Corporations record cited in the Petition makes no reference to Zhang. *See id*. ¶ 31(i); Feigenbaum Decl., Ex. 11 (NYS Dep't of State, Division of Corporations, Entity Information). Adding further confusion, Petitioners allege that Zhang created and registered Metro Joy "through her agents," *see* Pet. ¶ 33, but in keeping with the generally conclusory and non-specific character of Petitioners' pleadings, these alleged "agents" are not identified.

[7] For example, Petitioners point to an unexecuted insurance application identifying "Zhang Lan & Xaouifei Wang" as applicants with an address at the Apartment, *see* Pet. ¶ 32(ix), an insurance invoice apparently identifying "Zhang Lan & Xaoufei Wang" as contact persons for Metro Joy, *see id*. ¶ 32(xiv), and an unexecuted real estate brokerage agreement with "Seller's Signature" lines for both Metro Joy and "Zhang Lan or Xouafei Wang." *See id*. ¶ 32(xv); *see also* Feigenbaum Decl. ¶¶ 22(ix), (xiv)-(xv); Feigenbaum Decl. Exs. 19, 24-25. These scattered (and sometimes unexecuted) documents do not begin to suggest that Zhang Lan exercised control over Metro Joy or the Apartment.

the allegation that Metro Joy is "indirectly owned" by Zhang, *see id.* ¶ 7, is never spelled out: Petitioners do not identify the alleged owner of Metro Joy and do not explain where Zhang allegedly figures in the chain of ownership. *See Vance Bioenergy Sdn. Bhd. v. World Energy Alt., LLC,* 08 Civ. 9330 (LAK), 2010 WL 11595107, at *1 (S.D.N.Y. Jan. 18, 2010) ("conclusory statements" insufficient to establish jurisdiction through veil-piercing theory); *see also Bell*, 2020 WL 4570439, at *4.[8]

Petitioners make the additional, curious allegation that the Apartment was purchased by Metro Joy with funds allegedly transferred by Zhang to a third-party entity, Metro Joy International Limited. *See* Pet. ¶¶ 31, 31(v)-(vi). Petitioners appear to view this alleged transfer of funds as an alternative route to *quasi in rem* jurisdiction, but setting aside the wholly conclusory nature of the allegations, Petitioners fail to connect the dots, as Metro Joy and Metro Joy International are alleged to be two distinct, separately created entities. *See id.* ¶ 31. Indeed, beyond conclusory assertions that Metro Joy and Metro Joy International Limited were both incorporated or created by Zhang, Petitioners do not allege a connection between the two entities except to observe that their names are "essentially identical." *See id.* ¶¶ 31, 31(i).[9] Moreover,

---

Petitioners further allege that "Zhang's son, Xiaofei Wang," was in New York City in late 2019 and instructed a real estate broker to start showing the Apartment for sale, *see* Pet. ¶¶ 32(xxi)-(xxii); *see also* Feigenbaum Decl. 22 (xxi)-(xxii); Feigenbaum Decl. Exs.33-34, an allegation more consistent with control by Xiaofei Wang than by Zhang. It is also telling that in the New York state court action to foreclose on the Apartment, *Deutsche Bank Trust Companies America v. Metro Joy International, LLC et al.*, Index No. 850187/2020, Metro Joy and Xiaofei Wang are named as defendants; Zhang is not.

[8] In addition, Petitioners rely on documents—including numerous unauthenticated emails—that would not be "admissible in evidence." Fed. R. Civ. P. 56(c); Feigenbaum Decl., Exs. 17-18, 20-24, 26-27, 29. 32-34; *see also Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*, 19-CV-5903 (CS), 2019 WL 5884558, at *4 (S.D.N.Y. Nov. 8, 2019) (summary judgment standard applicable to petition to confirm arbitral award); *Anhui Provincial Imp. & Exp. Corp. v. Hart Enters. Int'l, Inc.*, No. 96 CIV. 128 (LAK), 1996 WL 229872, at *3 n.2 (S.D.N.Y. May 7, 1996) (assuming applicability of summary judgment standard).

[9] Petitioners were more forthright in their petition for attachment, where they acknowledged that they had no "documentation to prove that Zhang owns or controls [Metro Joy International Limited]" and no "documentary confirmation that Zhang's funds flowed through [Metro Joy International Limited] to Metro Joy to pay for the Apartment." *See* Feigenbaum Decl., Ex. 6 (Attachment Petition ¶¶ 31(iii), 35(v)); *see also id.* ¶ 31(iii) n.4 (no "record showing that those funds were transferred from [Metro Joy International Limited] to Metro Joy . . . .").

the transfers that Petitioners misleadingly describe as transfers to and from Zhang, *see id.*

¶¶ 31(v)-(vi), in fact appear, based on the cited documents, to be transfers to and from a non-

party entity called Success Elegant Trading Limited.  *See* Feigenbaum Decl. ¶¶ 21(v)-(vi);

Feigenbaum Decl. Exs. 15-16.  Neither the Petition nor Petitioners' supporting brief contains any

reference to Success Elegant Trading Limited, much less any justification for Petitioners'

characterization of the alleged funds transfers to and from Success Elegant Trading Limited as

transfers to and from Zhang.[10]

## II.    Petitioners' Action Should Be Dismissed For Improper Venue

Dismissal of Petitioners' action is also warranted because venue is improper.  An action

under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10,

1958, 21 U.S.T. 2517 (the "New York Convention") may be brought (i) in any federal district

court where, "save for the arbitration agreement," an "action or proceeding with respect to the

controversy between the parties" could have been brought, or (ii) in any federal district

embracing the "place designated in the agreement as the place of arbitration," so long as "such

place is within the United States."  *See* 9 U.S.C.A. § 204 (1970).  Here, the designated place of

arbitration was Beijing, not New York.  *See* Feigenbaum Decl., Ex. 7 (Amended & Restated

Agreement for the Sale & Purchase of Shares in South Beauty Investment Company Limited

("South Beauty SPA") § 13.2 ("The seat of the arbitration shall be Beijing.")); Feigenbaum

Decl., Ex. 7 (Agreement for the Sale & Purchase of Shares in La Dolce Vita Fine Dining

Holdings Limited ("LDV SPA") § 10.2 (same).  Accordingly, venue is proper in the Southern

District of New York only if the first prong of Section 204 is satisfied, *i.e.*, only if, in the absence

---

[10] Again, the petition for attachment is illuminating.  There, Petitioners described the alleged $10.725 million transfer as a transfer from a Success Elegant Trading Limited bank account, and Petitioners described the alleged $5 million transfer as a transfer "back to [Success Elegant Trading Limited]."  Feigenbaum Decl., Ex. 6 (Attachment Petition ¶¶ 31(ii), (viii), (ix)).

of the arbitration clause, an action on the underlying "controversy between the parties" could have been brought here.  *See* 9 U.S.C.A. § 204 (1970).[11]

However, nothing in Petitioners' pleadings suggests that a lawsuit on the underlying commercial dispute could have been brought in the Southern District of New York.  Indeed, as alleged by Petitioners, the dispute that triggered the arbitration proceedings arose in Asia, in connection with Petitioners' acquisition of a majority stake in South Beauty Investment Company Limited and its "chain of restaurants in China."  *See* Pet. ¶¶ 19-25.  According to Petitioners, the arbitration proceedings were held in China, and the resulting arbitral awards were entered in China.  *See id*. ¶ 1(i).  Neither Petitioners nor Respondents are alleged to be residents or domiciliaries of New York, *see id*. ¶¶ 2-6, and there are no allegations in this action that could support this Court's assertion of personal jurisdiction over any of the Respondents.[12]

Because the dispute underlying the foreign arbitral awards has no nexus to New York, and because Respondents are not amenable to personal jurisdiction in New York, an action over the South Beauty acquisition deal could not have been brought in this Court, rendering venue improper under Section 204.  *See 3573522 Canada Inc. v. N. Country Natural Spring Water, Ltd.*, 210 F.R.D. 544, 545 (E.D. Pa. 2002) (venue improper where parties had "no significant ties" to district and had not designated location within district as place of arbitration); *see also*

---

[11] Petitioners invoke 28 U.S.C. § 1391(b)(2) as an additional ground for venue, but Petitioners offer no explanation for the citation.  *See* Pet. ¶ 12.  Under this provision, a civil action may be brought in any judicial district where a "substantial part of the events or omissions giving rise to the claim occurred" or where a "substantial part of property that is the subject of the action is situated."  28 U.S.C.A. § 1391(b)(2) (2011).  The provision has no application here, for the alleged "events or omissions" giving rise to the dispute over the South Beauty acquisition deal did not occur in New York, and the Apartment—though located in New York City—is not the "subject of" this action for confirmation of foreign arbitral awards.

[12] Metro Joy is allegedly registered as a domestic limited liability company with an address in New York, *see* Pet. ¶¶ 7, 31(i), but it was not a party to the underlying arbitration proceedings or to the dispute over the South Beauty acquisition.  Accordingly, even on the assumption that Metro Joy would have been amenable to personal jurisdiction in the Southern District of New York, it would not have been a proper defendant in any action arising out of the "controversy between the parties."  *See* 9 U.S.C. § 204.

*SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*, 18-CV-8408 (VEC) (BCM), 2020 WL 6323938, at *7 (S.D.N.Y. July 30, 2020) (finding it "by no means obvious" that underlying commercial dispute could have been litigated in the Southern District of New York but concluding that parties had "later agreed to arbitrate in New York" and that any objection as to venue had in any event been waived), *report and recommendation adopted*, 2020 WL 5253515 (S.D.N.Y. Sept. 3, 2020).[13]

### III.   Petitioners' Action Should Be Dismissed On Grounds Of *Forum Non Conveniens*

Even if the deficiencies in jurisdiction and venue could be set aside, dismissal of this action would be warranted under the doctrine of *forum non conveniens*, which affords the federal district courts discretion to dismiss any action that "may be more appropriately tried in another forum, either for the convenience of the parties or to serve the ends of justice." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67 (2d Cir. 2003), *cert. denied*, 540 U.S. 1149 (2004), 540 U.S. 1150 (2004); *see also In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.* ("*Monde Re II*"), 311 F.3d 488, 496 (2d Cir. 2002) ("The doctrine of forum non conveniens . . . may be applied under the provisions of the [New York] Convention.").[14]

In the Second Circuit, the *forum non conveniens* inquiry proceeds in three stages.  First, the district court must make an "initial assessment of the deference due the plaintiff's choice of

---

[13] Some courts in the Southern District of New York have found that, "in the absence of an agreement to the contrary," venue is proper under the New York Convention in "any court that has subject matter jurisdiction." *Linsen Int'l Ltd. v. Humpuss Sea Transport Pte Ltd*, No. 09 Civ. 10393(GBD), 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 12-CY-4502 (ALC), 2016 WL 5793399, at *4 (S.D.N.Y. Sept. 30, 2016) (same).  However, this is not a plausible reading of the venue statute, for the language of Section 204 would be rendered superfluous if subject matter jurisdiction were itself sufficient to establish venue.

[14] The *forum non conveniens* question may be addressed even prior to jurisdictional analysis.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 428-29 (2007); *see also Monde Re II*, 311 F.3d at 498 ("[N]either we nor the district court are barred from passing over the question of jurisdiction and going directly to the forum non conveniens issue . . . .").

forum." *Pollux*, 329 F.3d at 74-75.  Second, the court must "determine whether an adequate

alternative forum exists."  *Id.*  And third, if there is an adequate alternative forum, the court must

"balance private and public interest factors to ascertain whether the case should be adjudicated in

plaintiff's chosen forum or in the alternative forum proposed by defendant."  *Id.*  The overall

objective is to ensure that the "forum fits the needs and is suitable to the circumstances of the

case," *id.* at 67, a determination that is "committed to the sound discretion of the trial court."

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

### A.      Petitioners' Choice of Forum Merits Little Deference

The level of deference owed to a plaintiff's choice of forum is determined on a "sliding

scale," depending on the "*bona fide* connection the plaintiff has with that forum."  *See Pollux*,

329 F.3d at 71.  A plaintiff's home forum is "presumed to be convenient," and thus a plaintiff's

decision to bring suit there is "generally entitled to great deference."  *See id.*  Conversely,

however, where a "plaintiff's choice is not its home forum," the "presumption in the plaintiff's

favor applies with less force, for the assumption that the chosen forum is appropriate is in such

cases less reasonable."  *Sinochem*, 549 U.S. at 430 (citation and internal quotation marks

omitted); *see also Pollux*, 329 F.3d at 71 (There is "no reason to assume a U.S. forum is

convenient for a foreign plaintiff's suit.").  Accordingly, a "foreign petitioner's choice of a

United States forum receives less deference" than a "domestic petitioner's choice of its home

forum."  *See Monde Re II*, 311 F.3d at 498; *see also Piper Aircraft*, 454 U.S. at 256 ("Because

the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a

foreign plaintiff's choice deserves less deference.").

Here, Petitioners are not residents of the United States, and neither they nor the

underlying commercial dispute have any alleged connection to the United States.  *See Pollux*,

329 F.3d at 71-72.  Petitioners' sole rationale for bringing suit in the Southern District of New

12

York appears to be the presence here of a condominium apartment that has no relation to the foreign arbitration proceedings at issue and is not owned by any of the respondents in those arbitration proceedings.  Under these circumstances, "little deference need be given" to the Petitioners' choice of forum.  *See Monde Re II*, 311 F.3d at 499.

### B.   An Adequate Alternative Forum Exists

In the second stage of *forum non conveniens* analysis, the Court must determine whether an adequate "alternative forum" exists.  *See id.*  "An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute."  *See id.*; *see also Piper Aircraft*, 454 U.S. at 254 n.22.

The obvious alternative forum here is China.  Petitioners allege that Zhang—the only Respondent against whom judgment is sought—is a "citizen and resident of China," Pet. ¶¶ 1(iii), 4, and China has been found to be an adequate alternative forum for *forum non conveniens* purposes, including in the context of an action to confirm arbitral awards.  *See Sinochem*, 549 U.S. at 435 (dispute between Chinese and Malaysian companies presented "textbook case for immediate *forum non conveniens* dismissal" where proceedings to resolve parties' dispute were underway in China); *Crescendo Mar. Co. v. Bank of Commc'ns Co., Ltd.*, 15 Civ. 4481 (JFK), 2016 WL 750351, at *8 (S.D.N.Y. Feb. 22, 2016) ("China is an adequate alternative forum."); *Lu v. Air China Int'l Corp.*, No. CV 92-1254 (RR), 1992 WL 453646, at *1 (E.D.N.Y. Dec. 16, 1992) ("It plainly appears that China is an adequate available forum for the parties to litigate this case.").  Moreover, the share purchase agreements provided for arbitration in China, indicating that Petitioners regarded China as a suitable forum for the resolution of disputes arising out of the South Beauty acquisition deal.  *See* South Beauty SPA § 13.2; LDV SPA 2 § 10.2.  For these reasons, China is an adequate alternative forum for this action.

Petitioners may argue that the Southern District of New York is the only proper forum inasmuch as the Apartment is located here.  But that argument is foreclosed by the Second Circuit's decision in *Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011).  There, the Second Circuit held that where, as here, the "adequacy of an alternative forum is assessed in the context of a suit to obtain a judgement and ultimately execution" on a defendant's alleged assets, the adequacy of the alternative forum "depends on whether there are some assets of the defendant in the alternate forum, *not whether the precise asset located here can be executed upon there*."  *Id*. at 390-91 (emphasis added).  Zhang plainly has assets in China; indeed, Petitioners have previously alleged as much.[15]  Thus, even if Petitioners had adequately alleged Zhang's ownership of the Apartment—they have not—the mere fact that the Apartment is located in the Southern District of New York would not in any event render all other forums inadequate.  As the Second Circuit explained, while "[i]t is no doubt true that only a United States court may attach a defendant's particular assets located here," this circumstance alone "cannot render a foreign forum inadequate."  *See id*. at 390 ("If it could, every suit having the ultimate objective of executing upon assets located in this country could never be dismissed because of [*forum non conveniens*].").

### C.    The Private And Public Interest Factors Favor Dismissal

The third and final step in the *forum non conveniens* analysis requires the Court to balance the "private interests of the litigants" and the "public interest concerns of the Court." *See In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*

---

[15] *See* Feigenbaum Decl., Ex. 6 (Attachment Petition ¶ 31(xiii)).  Indeed, in their petition for attachment, Petitioners emphasized that Zhang "had been ranked 310th in Forbes Magazine's China Richest List 2007, with a fortune of $240 million that had reportedly increased to $330 million by 2013."  *Id*.

("*Monde Re I*"), 158 F.Supp.2d 377, 384 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002).

Here, the private and public interest factors together favor dismissal.

The private interest factors pertain to the "convenience of the litigants." *Monde Re II*,

311 F.3d at 500. The Court must consider "(a) the ease of access to evidence; (b) the availability

of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability

of a judgment; and (e) all other practical matters that might shorten any trial or make it less

expensive." *Monde Re I*, 158 F.Supp.2d at 386; *see also Pollux*, 329 F.3d at 75. In a proceeding

to confirm foreign arbitral awards, these factors would ordinarily be "neutral in the balance,"

*Monde Re I*, 158 F.Supp.2d at 386, but because Petitioners' jurisdictional theory turns on fact-

intensive questions regarding Zhang's purported ownership and/or or control of the Apartment

(or of Metro Joy), it is far from clear that this action, if not dismissed for lack of jurisdiction or

for improper venue, could be resolved in summary fashion and without recourse to witnesses and

documents from China. *See id.*; *see also Lu*, 1992 WL 453646, at *3. Under these

circumstances, the private interest factors support dismissal.

The public interest factors include the "administrative difficulties associated with court

congestion; the imposition of jury duty upon those whose community bears no relationship to the

litigation; the local interest in resolving local disputes; and the problems implicated in the

application of foreign law." *Monde Re II*, 311 F.3d at 500; *see also Figueiredo Ferraz*, 665 F.3d

at 389-90. Here, foreign petitioners bring an action to confirm foreign arbitral awards issued in a

foreign arbitration proceeding arising from a foreign commercial dispute governed by foreign

law. China has a significantly greater interest than New York in the enforcement of arbitral

awards issued in Beijing, and the Southern District of New York, conversely, has a "legitimate

interest in ensuring that disputes with little connection to the district be litigated elsewhere." *See*

*Monde Re I*, 158 F.Supp.2d at 387.  Absent any nexus to New York—or to the United States—the public interest factors weigh decidedly in favor of dismissal.  *See Monde Re II*, 311 F.3d at 500-01; *see also Lu*, 1992 WL 453646, at *3 ("The public has a real interest in seeing that limited resources are not devoted to a case having virtually no relation to this district when an adequate alternate forum is so plainly available.").

## IV.     Confirmation Should Be Denied Under The New York Convention

Article V of the New York Convention sets out seven grounds on which a court may decline to confirm a foreign arbitral award.  New York Convention Art. V; *see also Monde Re II*, 311 F.3d at 494 ("These specified grounds for denial of enforcement are exclusive.").  Petitioners' motion for confirmation of the foreign arbitral awards should be denied under the fourth of those seven grounds, because the "composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties."  New York Convention Art. V.1(d); *see also Encyc. Universalis*, 403 F.3d at 90-93 (affirming denial of confirmation of arbitral award where board of arbitration "improperly composed").  As the Second Circuit has made clear, where the parties to an agreement have committed to a procedure for the appointment of arbitrators, the "New York Convention requires that their commitment be respected."  *Encyc. Universalis*, 403 F.3d at 91.  In this case, that commitment was not respected.

The arbitration clauses of the share purchase agreements provided that disputes arising under the agreements were to be submitted to the China International Economic and Trade Arbitration Commission ("CIETAC") for arbitration.  South Beauty SPA § 13.2; LDV SPA § 10.2.  Such arbitration was to be conducted pursuant to the CIETAC arbitration rules in force as of the date of the agreement, which were deemed "incorporated by reference" into the agreements and "as may be amended by the rest of" the arbitration clauses.  *See id.*  The share purchase agreements further provided for a panel of three arbitrators.  *See id.*  The presiding

16

arbitrator was to be appointed by CIETAC in accordance with a "list-procedure" set forth in the each of the share purchase agreements, while the remaining two arbitrators were to be selected by the claimants and the respondents, respectively.  *See id*.

Under the 2012 CIETAC Rules—incorporated by reference into the share purchase agreements—the claimants and the respondents had fifteen days from receipt of the Notice of Arbitration to make their respective selections, *see* Declaration of Eric B. Fisher, Ex. B (2012 CIETAC Rules § 27(3)), a deadline that was expressly noted in the CIETAC's first notice of arbitration.  *See* Feigenbaum Decl., Ex. 8 (Civil Judgment No. (2019) Zui Gao Fa Min Te 4 ("Civil Judgment 1"), at 7), Ex. 9 (Civil Judgment No. (2019) Zui Gao Fa Min Te 5 ("Civil Judgment 2"), at 6).  Because the arbitral respondents were unable to come to an agreement on an arbitrator within the fifteen-day period, Article 27(3) of the 2012 CIETAC Rules was triggered, requiring CIETAC to appoint the full three-member panel:

> Where either the Claimant side or the Respondent side fails to jointly nominate or jointly entrust the Chairman of CIETAC with appointing one arbitrator within fifteen (15) days from the date of receipt of the Notice of Arbitration, the *Chairman of CIETAC shall appoint all three members of the arbitral tribunal* and designate one of them to act as the presiding arbitrator.

2012 CIETAC Rules § 27(3) (emphasis added); *see also* Civil Judgment 1, at 6; Civil Judgment 2, at 6.

In a series of letters—dated July 9, 2015, July 15, 2015, and August 24, 2015, respectively—the arbitral respondents advised CIETAC that they had been unable to select an arbitrator within the fifteen-day period and, accordingly, requested that CIETAC appoint all three of the arbitrators in accordance with the 2012 CIETAC Rules.  *See* Civil Judgment 1, at 7; Civil Judgment 2 at 6-7.  However, CIETAC failed to appoint all three arbitrators as required under Article 27(3).  Instead, after the passage of several months, in notices issued in December 2015 and January 2016, CIETAC insisted that the arbitral respondents jointly nominate one

17

arbitrator, notwithstanding that the fifteen-day deadline had lapsed months before.  *See* Civil Judgment 1, at 7; Civil Judgment 2, at 7.  In its January 2016 notice, CIETAC warned that if the respondents failed jointly to nominate an arbitrator by January 25, 2016, CIETAC would do the choosing for them, while leaving the claimants' preferred arbitrator in place.  *See id*.  Faced with CIETAC's months-long refusal to apply Article 27(3), and with the threat that CIETAC would unilaterally impose an arbitrator on the respondents while honoring the claimants' choice of arbitrator, Zhang ultimately nominated an arbitrator in January 2016 in order to "avoid further prejudice to her rights in the arbitration proceedings," while reserving all rights to object to the arbitral composition.  *See id*.  GL Holdings and QJL Development indicated their consent to Zhang's nominee but likewise reserved all rights.  *See id*.

In letters dated February 7, 2016 and July 11, 2016, the arbitral respondents continued to press their objections to the composition of the arbitral tribunal.  *See id*.  Notwithstanding these objections, CIETAC issued a notice dated September 27, 2016, advising the arbitral parties that the arbitral tribunal had been formed and would include Zhang's nominee, who was characterized in the notice as the joint nominee of the respondents.  *See* Civil Judgment 1, at 7-8; Civil Judgment 2, at 7.

In short, under the 2012 CIETAC Rules—incorporated by reference into the arbitration clauses, and expressly invoked in CIETAC's first arbitration notice—CIETAC was required to "appoint all three members of the arbitral tribunal" upon the failure of the arbitral respondents to jointly nominate an arbitrator within the fifteen-day period allotted under the rules.  2012 CIETAC Rules § 27(3).  CIETAC did not appoint the three arbitrators as it was required to do (and as the arbitral respondents requested, repeatedly, that it do).  Instead, CIETAC allowed months to pass, refusing to adhere to Rule 27(3) and ultimately forming an arbitral tribunal in

violation of Rule 27(3)'s mandate, over the objections of the arbitral respondents.  This failure to adhere to the agreed-upon procedures for the proper appointment of arbitrators is "more than a trivial matter of form."  *See Encyc. Universalis*, 403 F.3d at 91.  As the Second Circuit explained, the "importance of arbitral composition" is reflected in the New York Convention itself, which includes "failure to comport with an agreement's requirements for how arbitrators are selected" among "one of only seven grounds for refusing to enforce an arbitral award."  *See id*.  Here, as in *Encyc. Universalis*, the "composition of the arbitral authority was not in accordance with the parties' agreement."  *See id*. at 91-92.  Accordingly, Petitioners' request for confirmation of the foreign arbitral awards should be denied.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court dismiss this action in its entirety, deny Petitioner's Motion and grant such other and further relief as this Court deems appropriate.

Dated:  New York, New York
   August 19, 2021       Respectfully submitted,

                **BINDER & SCHWARTZ LLP**

          By:  /s/ Eric B. Fisher
             Eric B. Fisher
             M. Tomas Murphy
             366 Madison Avenue, 6th Floor
             New York, NY 10017
             (212) 510-7008
             efisher@binderschwartz.com
             tmurphy@binderschwartz.com

             *Attorneys for Respondents Zhang Lan,*
             *Grand Lan Holdings Group (BVI) Limited*
             *and Qiao Jiang Lan Development Limited*