**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LA DOLCE VITA FINE DINING COMPANY
LIMITED and LA DOLCE VITA FINE DINING
GROUP HOLDINGS LIMITED,

          Petitioners,

     - v. -

ZHANG LAN, GRAND LAN HOLDINGS
GROUP (BVI) LIMITED, QIAO JIANG LAN
DEVELOPMENT LIMITED f/k/a/ SOUTH
BEAUTY DEVELOPMENT LIMITED, and
METRO JOY INTERNATIONAL LLC,

          Respondents,

Case No.: 1:21-cv-03071-LAK-JW

**ECF Case**

## OBJECTION TO REPORT & RECOMMENDATION

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

LEGAL STANDARD ................................................................................................. 2

ARGUMENT .............................................................................................................. 3

I.    Petitioners' Action Should Be Dismissed For Lack of Jurisdiction ................................. 3

II.   Petitioners' Action Should Be Dismissed For Improper Venue ..................................... 8

III.  Petitioners' Action Should Be Dismissed Based On *Forum Non Conveniens* .............. 10

    A.    The Magistrate Judge Accorded Undue Deference To Petitioners' Choice of Forum ............................................................................................ 11

    B.    The Magistrate Judge Failed To Apply Controlling Second Circuit Precedent ......... 12

    C.    The Magistrate Judge Did Not Properly Balance The Private And Public Interest Factors ................................................................................. 14

IV.   Confirmation Should Be Denied Under The New York Convention ............................ 15

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

*Cases*

*3573522 Canada Inc. v. N. Country Nat. Spring Water, Ltd.*,
  210 F.R.D. 544 (E.D. Pa. 2002) .................................................................................. 9

*Amalgamated Bank v. Helmsley-Spear, Inc.*,
  970 N.Y.S.2d 522 (N.Y. App. Div. 2013) .................................................................. 7

*Blohm+Voss GmbH v. M/V Olympia Explorer*,
  No. 05 Cv. 7753(BSJ), 2008 WL 2756377 (S.D.N.Y. July 15, 2008) ...................... 7

*Crescendo Mar. Co. v. Bank of Commc'ns Co.*,
  15 Civ. 4481 (JFK), 2016 WL 750351 (S.D.N.Y. Feb. 22, 2016) .......................... 12

*CWT Canada II L.P. v. Danzik*,
  No. CV16-0607, 2019 WL 79001 (D. Ariz. Jan. 2, 2019) ....................................... 6

*Deutsche Bank Tr. Co. Ams. v. Metro Joy Int'l, LLC*,
  No. 850187/2020, 2022 WL 1093431 (N.Y. Sup. Ct. Apr. 11, 2022) ...................... 4

*Encyc. Universalis S.A. v. Encyc. Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005) ...................................................................................... 15

*Estate of Izzo v. Vanguard Funding, LLC*,
  15-cv-7084 (ADS)(GRB), 2017 WL 1194464 (E.D.N.Y. Mar. 30, 2017) ................ 7

*Europcar Italia S.p.A. v. Maiellano Tours, Inc.*,
  156 F.3d 310 (2d Cir. 1998) ............................................................................. 16, 17

*Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011) ......................................................................... 12, 13, 15

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Rep.*,
  582 F.3d 393 (2d Cir. 2009) ...................................................................................... 3

*Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
  No. 11 Civ. 420(RJH), 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) ........................ 3

*Harbour Victoria Inv. Holdings Ltd. v. Chawla*,
  No. 15 CV 3212 (S.D.N.Y. May 15, 2015) ............................................................... 5

*In re Anjopa Paper & Board Mfg. Co.*,
  269 F. Supp. 241 (S.D.N.Y. 1967) ............................................................................ 6

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
  158 F.Supp.2d 377 (S.D.N.Y. 2001) ............................................................. 11, 14, 15

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
  311 F.3d 488 (2d Cir. 2002)...............................................................................11, 14, 15, 16

*James v. Beaufort Cnty. Bd. of Edu.*,
  465 F.2d 477 (4th Cir. 1972) ............................................................................................. 6

*Jaramillo v. Vega*,
  675 F. App'x 76 (2d Cir. 2017) (summary order) ............................................................. 7

*Kampfman v. Transamerica Fin. Servs. Co. of Ohio*,
  164 F.3d 618 (2d Cir. 1998)............................................................................................... 7

*Land Air & Sea Transp. v. El Nasr Mining Co.*,
  No. 06-CV-13482 (GBD), 2008 WL 612732 (S.D.N.Y. Mar. 4, 2008).................................. 10

*Lewis v. Zon*,
  573 F. Supp. 2d 804 (S.D.N.Y. 2008)................................................................................. 3

*Linsen Int'l Ltd. v. Humpuss Sea Transport Pte Ltd*,
  No. 09 Civ. 10393(GBD), 2011 WL 1795813 (S.D.N.Y. Apr. 29, 2011)........................... 9, 10

*Lu v. Air China Int'l Corp.*,
  No. CV 92-1254 (RR), 1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) ............................... 12, 15

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)....................................................................................................... 10, 11

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003).......................................................................................... 11, 12, 14

*Reddy v. Buttar*,
  No. 3:18-cv-00172-FDW-DSC, 2019 WL 2106082 (W.D.N.C. May 14, 2019) ..................... 9

*Shanghai Lan Cai Asset Mgmt. Co. v. Jia*,
  CV 18-10255 SJO (MRWx), 2019 WL 6870345 (C.D. Ca. Mar. 26, 2019)........................... 9

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007)........................................................................................................... 12

*Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*,
  12-CY-4502 (ALC), 2016 WL 5793399 (S.D.N.Y. Sept. 30, 2016)........................................ 10

*SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*,
  18-CV-8408 (VEC) (BCM), 2020 WL 6323938 (S.D.N.Y. July 30, 2020)....................... 9, 10

*Sullivan v. McFetridge*,
  55 N.Y.S.2d 511 (N.Y. Sup. Ct. 1945) ............................................................................. 6

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd. v. Tiancheng Chempharm, Inc. USA*,
    771 F. App'x 36 (2d Cir. 2019) (summary order) ................................................................. 17

*Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*,
    No. LA CV15-08048 JAK (RAOx), 2018 WL 10152573 (C.D. Cal. July 10, 2018) ............... 9

*United States v. Romano*,
    794 F.3d 317 (2d Cir. 2015) ............................................................................................. 3

## Statutes

9 U.S.C.A. § 203 (1970) ............................................................................................................ 10

9 U.S.C.A. § 204 (1970) .................................................................................................... 8, 9, 10

28 U.S.C.A. § 636 (2009) ...................................................................................................... 2, 3

## Rules

Fed. R. Civ. P. 55 ..................................................................................................................... 7

Fed. R. Civ. P. 72 ................................................................................................................. 2, 3

Local Civil Rule 55.1 ................................................................................................................ 7

Local Civil Rule 55.2 ................................................................................................................ 7

## Other Authorities

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    June 10, 1958, 21 U.S.T. 2517 ............................................................... 8, 10, 11, 15, 16

Zhang Lan ("Zhang"), Grand Lan Holdings Group (BVI) Limited ("GL Holdings"), and Qiao Jiang Lan Development Limited ("QJL Development") (collectively, "Respondents") respectfully submit this objection to the Report and Recommendation dated April 20, 2022 of United States Magistrate Judge Jennifer E. Willis (the "R&R").

## PRELIMINARY STATEMENT

In this action, two Cayman Island entities seek judgment based on a pair of foreign arbitral awards issued by the China International Economic and Trade Arbitration Commission ("CIETAC") against the Respondents in connection with a commercial dispute that arose years ago in China. However, not one of the Respondents is subject to the personal jurisdiction of this Court, and the underlying commercial dispute—which relates to the acquisition by Petitioners of a majority stake in a chain of restaurants in China—has no nexus at all to New York. This lawsuit, in short, has no place before this Court. Petitioners nevertheless purport to have found a jurisdictional foothold in this District, in the form of a condominium apartment located in Manhattan.

Petitioners' jurisdictional argument depends entirely on the ownership of that condominium apartment: Unless the apartment belongs to one or more of the Respondents, this proceeding is a non-starter. And this is where the complications for Petitioners really begin, because by Petitioners' own account, title to the apartment is not held by any of the Respondents or, indeed, by anyone at all who was a party to the foreign arbitral proceedings. Rather, according to Petitioners, the purchaser and title-holder of the apartment is a stranger to the arbitration, Metro Joy International LLC ("Metro Joy"), a limited liability company allegedly based in New York.

Petitioners have named Metro Joy as a respondent in this action, but Petitioners do not seek judgment against Metro Joy. Instead, Petitioners seek judgment exclusively against *Zhang*,

and they insist that Metro Joy's condominium apartment is the key to the assertion of *quasi in rem* jurisdiction over Zhang.  To make this link, Petitioners allege in confused and conclusory fashion that Zhang secretly enjoys what Petitioners characterize as "effective ownership" over the apartment, either through alleged control of the apartment or alleged control of its owner, Metro Joy.  But saying these things does not make them so, and the bewildering welter of documents that Petitioners have placed on the docket—many of them involving a different apartment altogether—do not come close to establishing that true ownership rests with anyone other than the owner of record, Metro Joy.

The Magistrate Judge looked right past these evidentiary shortcomings, however, and concluded that the ownership question had already been decided—by another judge in another proceeding—based on a single recital paragraph from a superseded, *ex parte* order issued in an attachment action in which the Respondents never even made an appearance.  As discussed below, the Magistrate Judge's reliance on this *ex parte* order is misplaced, and the R&R is thoroughly flawed in many other respects as well.  Neither the *ex parte* order, nor any of Petitioners' voluminous submissions, provide any basis for the exercise of jurisdiction over Zhang or any of the other Respondents, and this Court is not the proper forum for confirmation of foreign arbitral awards issued in connection with a foreign commercial dispute half a world away.  The R&R should be rejected in full, and Petitioners' action should be dismissed in its entirety.

## LEGAL STANDARD

The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.A. § 636(b)(1) (2009); *see also* Fed. R. Civ. P. 72(b)(3).  The Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

2

Any portions of a magistrate judge's report and recommendation—including "specified proposed findings or recommendations"—to which a proper and timely objection has been made are reviewed *de novo*.  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); *United States v. Romano*, 794 F.3d 317, 340-41 (2d Cir. 2015).  Any portions of a report and recommendation to which no timely objection has been raised are reviewed for clear error.  *See Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

## ARGUMENT

### I.      Petitioners' Action Should Be Dismissed For Lack of Jurisdiction

The Magistrate Judge erred in the first instance by failing to recommend dismissal for lack of jurisdiction.  A petition to confirm a foreign arbitral award may be heard only by a court with "*in personam* or *quasi in rem* jurisdiction over the party ordered to pay," and Petitioners have pleaded no facts that would establish personal or *quasi in rem* jurisdiction over any of the Respondents.  *See Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11 Civ. 420(RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012); *see also Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Rep.*, 582 F.3d 393, 397-98 (2d Cir. 2009).

The petition in this action relies exclusively on a theory of *quasi in rem* jurisdiction, asserted exclusively with respect to Zhang and based exclusively on the presence in Manhattan of a single condominium apartment:  Apartment 39A at the Baccarat Hotel & Residences (the "Apartment").  *See* Petition to Confirm Foreign Arbitral Awards ("Pet.") ¶¶ 1(ii), 11, 15, 29-30, ECF No. 1, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071, (S.D.N.Y. Apr. 9, 2021).[1]  This reliance on *quasi in rem* jurisdiction is fundamentally misplaced, among other

---

[1] *See also* Petitioners' Memorandum of Law in Support of Petition to Confirm Two Foreign Arbitral Awards ("Pet. Mem.") at 2, ECF No. 9, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071 (S.D.N.Y. Apr. 9, 2021) ("By this Petition, Petitioners accordingly seek to confirm the Arbitral Awards and related relief, *all grounded in the Court's quasi-in-rem jurisdiction over the Apartment and its contents.*" (emphasis added)); Petitioners' Reply Memorandum of Law in Further Support of Their Petition to Confirm Two Foreign Arbitral Awards ("Pet. Reply

things because Petitioners' own pleadings and submissions indicate, repeatedly, that the

Apartment is not owned by Zhang.  *See* Memorandum of Law in Opposition to Petitioners'

Motion to Confirm Foreign Arbitral Awards ("Resp. Mem.") at 4-9.  In fact, there is no dispute

that Zhang neither purchased nor holds title to the Apartment; to the contrary, Petitioners

themselves allege that the purchaser and title-holder is *Metro Joy*.[2]  Indeed, Petitioners have

proffered a purported deed to the Apartment which identifies the Apartment's owner as Metro

Joy.[3]  Petitioners further allege that it was Metro Joy, not Zhang, that took out a mortgage on the

Apartment.[4]  The Apartment is in fact the subject of foreclosure proceedings in the New York

Supreme Court, proceedings in which Metro Joy—not Zhang or GL Holdings or QJL

Development—is named as a defendant.[5]

　　　　Petitioners nevertheless maintain that Zhang enjoys what Petitioners somewhat

mysteriously describe as "effective ownership" over the Apartment.  *See* Pet. ¶ 29.  Petitioners'

insistence that Zhang is the "true owner" rests on vague and unsubstantiated assertions that

---

Mem.") at 9, ECF No. 41, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071 (S.D.N.Y. Aug. 26, 2021) (describing the requested "judgment against Zhang" as "jurisdictionally tethered to real property in New York"). Petitioners further advised the Court that it "need not . . . make any determinations" as to "personal jurisdiction over Zhang," although they suggested that they intended to "establish the Court's personal jurisdiction over Zhang" in a separate proceeding before a different judge.  *See* Pet. Mem. at 15-16.  In any event, Petitioners have not pleaded any facts that would support the exercise of personal jurisdiction over Zhang or the other Respondents.

[2] *See* Pet. ¶ 14 ("[T]itle to the Apartment is in the name of Metro Joy"), 30 (Apartment "purchased in Metro Joy's name"), 31(iv) ("Metro Joy executed a contract to purchase the Apartment . . . ."), 31(vi) ("Metro Joy . . . purchased the Apartment for $10.25 million"); *see also* Pet. Mem. at 10 ("Metro Joy executed a contract to purchase the Apartment" and "Metro Joy . . . . purchased the Apartment for $10.25 million . . . .").

[3] *See* Declaration of Steven B. Feigenbaum ("Feigenbaum Decl.") ¶ 21(iv), ECF No. 10, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071 (S.D.N.Y. Apr. 9, 2021); Feigenbaum Decl., Ex. 14 (including a cover page identifying Metro Joy as the "Grantee / Buyer," a "Unit Deed" executed by Metro Joy and identifying Metro Joy as the "Grantee," a "Real Property Transfer Report" identifying Metro Joy as the "Buyer," an affidavit of smoke detector compliance, executed by Metro Joy as "Grantee," and an unexecuted "Customer Registration Form for Water and Sewer Billing," identifying Metro Joy as the owner).

[4] *See* Pet. ¶ 31(vi) ("Metro Joy . . . had "taken out a $5.125 million mortgage on the Apartment."); *see also Deutsche Bank Tr. Co. Ams. v. Metro Joy Int'l, LLC*, No. 850187/2020, 2022 WL 1093431, at *1 (N.Y. Sup. Ct. Apr. 11, 2022) ("The mortgage secured a loan of $5,125,000.00 made by [Deutsche Bank Trust Co. Americas] to Defendants Metro Joy International, LLC . . . and Xiaofei Wang . . . and is documented by a note dated October 22, 2014.").

[5] *See Deutsche Bank Tr. Co. Ams. v. Metro Joy Int'l, LLC*, Index No. 850187/2020 (N.Y. Sup. Ct.).

Zhang in some way "controls" the Apartment or controls its owner, Metro Joy.  *See* Pet. ¶¶ 7, 11, 14, 29, 32.[6]  As Respondents explained in their opposition memorandum, such conclusory allegations fall well short of establishing control and ownership for jurisdictional purposes.  *See* Resp. Mem. at 4-9.  Further, Petitioners' contention that Zhang has an ownership interest in the Apartment is belied by the fact that Zhang is not a party to the foreclosure case in New York Supreme Court.[7]  As the Court found in *Harbour Victoria Inv. Holdings Ltd. v.  Chawla*, more is required to support *quasi in rem* jurisdiction than mere innuendo or "potentially intriguing questions" about a respondent's conjectured "relationship to the entity that holds title to the apartment."[8]  Because Petitioners have "tendered no proof that the apartment . . . even belongs" to any of the Respondents, their argument for *quasi in rem* jurisdiction necessarily fails.[9]

The Magistrate Judge nevertheless found that *quasi in rem* jurisdiction was proper, relying on a recital paragraph from an *ex parte* order of attachment (the "Order of Attachment") so-ordered by Judge Andrew L. Carter, Jr. on May 8, 2020:

> The property that Petitioners seek to attach consisting of a condominium apartment, purchased in Metro Joy's name in December 2014 and currently owned or controlled by Respondents, located at 20 West 53rd Street, Apartment 39A, New York, New York 10019 (the "Apartment"), together with any assets and possessions owned or controlled by Respondents within the Apartment, including but not limited to artwork, furniture, jewelry, lighting and electronics, and whether the Apartment or its contents are today held in the name of Metro Joy, Zhang, Grand

---

[6] Petitioners' allegations with respect to Zhang's purported "control" over the Apartment are not only vague and conclusory but also internally inconsistent:  Petitioners allege *both* that Zhang "has full control" over the Apartment *and* that Zhang no longer has "full control" of the Apartment, having allegedly "abandoned it after learning of the Attachment Order . . . ."  Pet. ¶¶ 11, 14.

[7] *See Deutsche Bank Tr. Co. Ams. v. Metro Joy Int'l, LLC*, Index No. 850187/2020 (N.Y. Sup. Ct.).

[8] *See* Declaration of Eric B. Fisher ("Fisher Decl."), Ex. A (Transcript of Proceedings 8:7-13, ECF No. 46, *Harbour Victoria Inv. Holdings Ltd. v. Chawla*, No. 15 CV 3212 (S.D.N.Y. May 15, 2015)).

[9] *See* Fisher Decl., Ex. A (Transcript of Proceedings 8:1-5, ECF No. 46, *Harbour Victoria Inv. Holdings Ltd. v. Chawla*, No. 15 CV 3212 (S.D.N.Y. May 15, 2015)).

5

> Lan Holdings, QJL Development, or any other entity or person
> controlled by Zhang;

Feigenbaum Decl., Ex. 4 (Order of Attachment); *see also* R&R at 7.  The Magistrate Judge's

reliance on this recital paragraph—which simply describes the parameters of Petitioners'

attachment request, but which the Magistrate Judge understood to reflect a "finding" or

"conclusion" that the Apartment and Metro Joy were both "controlled by Zhang," *see* R&R at 7-

8—is improper for a number of reasons.

First, Zhang cannot properly be bound by the contents of an *ex parte* order of attachment

entered without notice and without hearing in an action in which she never appeared.  *See James*

*v. Beaufort Cnty. Bd. of Edu.*, 465 F.2d 477, 477 (4th Cir. 1972) ("It is axiomatic that an *ex parte*

order, entered without notice or hearing, and apparently viewed by the issuing Court itself more

as a mere administrative entry rather than as a formal judicial order, will not support a plea of *res*

*judicata* or authorize an estoppel . . . ."); *see also CWT Canada II L.P. v. Danzik*, No. CV16-

0607, 2019 WL 79001, at *9 (D. Ariz. Jan. 2, 2019) (attachment orders "not final" and "[i]ssues

determined" in attachment orders not "barred by collateral estoppel."); *In re Anjopa Paper &*

*Board Mfg. Co.*, 269 F. Supp. 241, 268 (S.D.N.Y. 1967) (declining to give "res judicata effect"

to *ex parte* order of New York Supreme Court); *Sullivan v. McFetridge*, 55 N.Y.S.2d 511, 524

(N.Y. Sup. Ct. 1945) ("The doctrine of res adjudicata is not regarded as applying to ex parte

orders.").

Second, Zhang's failure to appear in a proceeding for the attachment of *someone else's*

*property* is not properly regarded as a default.  No default judgment has been entered against any

of the Respondents in Judge Carter's court, nor have Petitioners moved for default judgment,

filed any Certificate of Default, or taken the steps required for entry of default judgment under

the Federal and Local Rules and Judge Carter's individual practices.[10]  Because there has been

no default judgment, the Magistrate Judge's reliance on *Jaramillo v. Vega*, 675 F. App'x 76 (2d

Cir. 2017) (summary order)—a summary order addressing a motion to vacate a default judgment

that had been entered against the appellant—is entirely misplaced.  *See* R&R at 7-8.

Third, even if the *ex parte* order could be regarded as a default judgment, it would not

have the preclusive effect ascribed to it by the Magistrate Judge.  It is a well-established general

rule that "default judgments lack issue-preclusive effect."  *See Blohm+Voss GmbH v. M/V*

*Olympia Explorer*, No. 05 Cv. 7753(BSJ), 2008 WL 2756377, at *8 (S.D.N.Y. July 15, 2008)

(citation and internal quotation marks omitted); *see also Estate of Izzo v. Vanguard Funding*,

*LLC*, 15-cv-7084 (ADS)(GRB), 2017 WL 1194464, at *6-7 (E.D.N.Y. Mar. 30, 2017).  Default

judgments also have no claim-preclusive effect as to factual issues not determined by the

judgment, *see Blohm+Voss*, 2008 WL 2756377, at *8, and no claim-preclusive effect at all

where, as here, the court that entered judgment lacked jurisdiction over the party against whom

*res judicata* is invoked.  *See Kampfman v. Transamerica Fin. Servs. Co. of Ohio*, 164 F.3d 618

(2d Cir. 1998) (unpublished disposition).[11]

Finally, the Order of Attachment is not operative now and was not operative when the

R&R was issued.[12]  The Order of Attachment was expressly superseded by a subsequent order of

Judge Andrew L. Carter, Jr., signed on March 15, 2022.  *See* Fisher Decl., Ex. B (Amended

---

[10] *See* Fed. R. Civ. P. 55; Local Civil Rules 55.1, 55.2; Individual Practices of Andrew L. Carter, Jr., Section 2(G) and Attachment A, *available at* https://www.nysd.uscourts.gov/sites/default/files/practice_documents/ALC% 20Final%20INDIVIDUAL%20PRACTICES%20OF%20JUDGE%20ANDREW%20L%20CARTER_0.pdf.

[11] *See also Amalgamated Bank v. Helmsley-Spear, Inc.*, 970 N.Y.S.2d 522, 524 (N.Y. App. Div. 2013) (under New York law, "default judgment has no res judicata effect . . . because a default is not a determination on the merits as is necessary to invoke that doctrine").

[12] The Magistrate Judge was not unaware of the Amended Attachment Order.  Petitioners alerted the Magistrate Judge to the existence of the Amended Attachment Order by letter dated March 16, 2022, *see* Letter to Mag. J. Willis, ECF No. 44, *La Dolce Vita Fine Dining Co., Ltd. v. Zhang*, 1:21-cv-03071-LAK-JW (Mar. 16, 2022), and the Magistrate Judge cited it herself in the R&R.  *See* R&R at 3.

Order of Attachment ¶ 1, ECF No. 67, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 1:20-mc-00200-ALC (Mar. 15, 2022) ("This Order . . . hereby supersedes the Attachment Order, as modified by the Court's July 23, 2020 Order, and the Confirmation Order."))[13]  The currently operative attachment order—the Amended Order of Attachment—does not include the language relied upon by the Magistrate Judge in the R&R and, indeed, does not contain any language indicating that Zhang owns or controls the Apartment.  *See, e.g., id.* at (b).

## II.    Petitioners' Action Should Be Dismissed For Improper Venue

Under Chapter 2 of the Federal Arbitration Act—implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention")—venue may be had in the Southern District of New York under only two circumstances.  First, venue is proper in this District if the "place designated in the agreement as the place of arbitration" is itself located in the Southern District of New York.  *See* 9 U.S.C.A. § 204 (1970).  However, the designated place of arbitration here was Beijing, not New York.[14]  There accordingly can be no venue under Section 204 on that basis, and the Magistrate Judge did not find otherwise.

Under the remaining prong of Section 204, venue is proper if, "save for the arbitration agreement," an "action or proceeding with respect to the controversy between the parties could be brought" in the Southern District of New York.  *See* 9 U.S.C.A. § 204.  But according to Petitioners, the underlying controversy is a foreign commercial dispute that arose in Asia,

---

[13] The Amended Order of Attachment indicates that the amendment was "solely for the purpose of expressly allowing Deutsche Bank to proceed" with a foreclosure sale of the Apartment, ¶ 2, but revisions were in fact made throughout the order.

[14] *See* Feigenbaum Decl., Ex. 7 (Amended & Restated Agreement for the Sale & Purchase of Shares in South Beauty Investment Company Limited ("South Beauty SPA") § 13.2 ("The seat of the arbitration shall be Beijing.")); Feigenbaum Decl., Ex. 7 (Agreement for the Sale & Purchase of Shares in La Dolce Vita Fine Dining Holdings Limited ("LDV SPA") § 10.2 (same).

between contracting parties who are neither residents nor domiciliaries of New York, in connection with the acquisition of a majority stake in a foreign company and its "chain of restaurants in China." *See* Pet. ¶¶ 2-6, 19-25.  The underlying dispute thus has no nexus to New York, and the parties to that dispute—all of them foreign entities or individuals—are not subject to personal jurisdiction in this Court.[15]  The "controversy between the parties" therefore could not have been litigated here, rendering venue improper under Section 204.  *See 3573522 Canada Inc. v. N. Country Nat. Spring Water, Ltd.*, 210 F.R.D. 544, 545 (E.D. Pa. 2002) (venue improper where parties had "no significant ties" to district and had not designated location within district as place of arbitration).[16]

The Magistrate Judge rejected this analysis, reasoning that venue under Section 204 is *coextensive* with subject-matter jurisdiction.  *See* R&R at 8-9.  In support of this proposition, the Magistrate Judge relied principally on two decisions—one citing the other—which stated that, absent an "agreement to the contrary," venue is proper under Section 204 in "any court that has subject matter jurisdiction."  *Linsen Int'l Ltd. v. Humpuss Sea Transp. Pte Ltd*, No. 09 Civ.

---

[15] Metro Joy is allegedly registered as a limited liability company with an address in New York, *see* Pet. ¶¶ 7, 31(i), but it was not a party to the arbitration proceedings or to the underlying commercial dispute. *See, e.g., id.* ¶ 6 (excluding Metro Joy from the definition of "Arbitral Respondents").  Accordingly, even on the assumption that Metro Joy could have been subject to personal jurisdiction in the Southern District of New York, it would not have been a proper defendant in any action arising out of the "controversy between the parties." *See* 9 U.S.C. § 204.

[16] *See also SSI (Beijing) Co. Ltd. v. Prosper Bus. Dev. Corp.*, 18-CV-8408 (VEC) (BCM), 2020 WL 6323938, at *7 (S.D.N.Y. July 30, 2020) (finding it "by no means obvious" that underlying commercial dispute could have been litigated in the Southern District of New York "absent the arbitration clause" but concluding that parties had "later agreed to arbitrate in New York" and that because the parties "affirmatively alleged that venue is proper," any potential objection as to venue had in any event been waived), *report and recommendation adopted*, 2020 WL 5253515 (S.D.N.Y. Sept. 3, 2020).  Consistent with the statutory framework, district courts have looked beyond subject-matter jurisdiction to determine whether venue was proper under Section 204.  *See Reddy v. Buttar*, No. 3:18-cv-00172-FDW-DSC, 2019 WL 2106082, at *7 (W.D.N.C. May 14, 2019) (finding venue where there was personal jurisdiction over defendant); *Shanghai Lan Cai Asset Mgmt. Co. v. Jia*, CV 18-10255 SJO (MRWx), 2019 WL 6870345, at *3 n.3 (C.D. Ca. Mar. 26, 2019) (venue proper "because the sole named defendant . . . .resides within this District"); *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, No. LA CV15-08048 JAK (RAOx), 2018 WL 10152573, at *7 (C.D. Cal. July 10, 2018) (finding venue proper based on allegations that defendants transacted business in District and "key event" in alleged conspiracy occurred in district), *aff'd*, 772 F. App'x 585 (9th Cir. 2019).

10393(GBD), 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 12-CY-4502 (ALC), 2016 WL 5793399, at *4 (S.D.N.Y. Sept. 30, 2016) (citing *Linsen Int'l*).[17]

However, neither *Linsen Int'l* nor *Sistem Muhendislik* provided a reasoned basis for construing Section 204 in this way.  In fact, such a conflation of subject-matter jurisdiction with venue makes no sense of the statutory framework, which provides separately for subject-matter jurisdiction (under Section 203) and for venue (under Section 204).  The venue provision, Section 204, takes subject-matter jurisdiction as a starting point and then sets out two *additional* requirements, at least one of which must be met to establish proper venue.  *See* 9 U.S.C.A. § 204; *see also SSI (Beijing) Co.*, 2020 WL 6323938, at *5-7 (analyzing subject-matter jurisdiction first, venue second).  Respondents respectfully submit that the Magistrate Judge's approach to the venue question in this case should be rejected, as it improperly reads Section 204 out of the statute.

## III.    Petitioners' Action Should Be Dismissed Based On *Forum Non Conveniens*

Dismissal is also warranted under the doctrine of *forum non conveniens*, the "central purpose" of which, as the label implies, is to "ensure that the trial is convenient."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).  Even where jurisdiction and venue are proper, the doctrine of *forum non conveniens* enables courts to reject actions brought under the New York Convention for "reasons of convenience, judicial economy and justice."  *In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.* ("*Monde Re II*"), 311

---

[17] The Magistrate Judge also cited to *Land Air & Sea Transp. v. El Nasr Mining Co.*, No. 06-CV-13482 (GBD), 2008 WL 612732 (S.D.N.Y. Mar. 4, 2008).  *See* R&R at 8.  However, *Land Air & Sea* is inapposite, as that case was a maritime action in which the Court relied on principles of personal jurisdiction under admiralty / maritime law. *See Land Air & Sea*, 2008 WL 612732, at *1, 2.  Moreover, the decision provided no analysis of the language of Section 204 or its application to the venue question.

F.3d 488, 496-97 (2d Cir. 2002) (The doctrine of *forum non conveniens* "may be applied under the provisions of the [New York] Convention." ).  Whether to dismiss on grounds of *forum non conveniens* is "committed to the sound discretion of the trial court."  *Piper Aircraft*, 454 U.S. at 257; *see also In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.* ("*Monde Re I*"), 158 F.Supp.2d 377, 381 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002).  In the Second Circuit, as the Magistrate Judge correctly observed, a *forum non conveniens* challenge is "analyzed through a three-step framework."  R&R at 9.

### A.    The Magistrate Judge Accorded Undue Deference To Petitioners' Choice of Forum

In the first step of the analysis, the district court must determine the "deference due the plaintiff's choice of forum."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74-75 (2d Cir. 2003), *cert. denied*, 540 U.S. 1149 (2004), 540 U.S. 1150 (2004).  In considering the level of deference to accord to Petitioners, the Magistrate Judge did not in any way address the fact that Petitioners are foreign entities.  This was a significant omission, for it is well-settled that a "foreign petitioner's choice of a United States forum receives less deference" than a "domestic petitioner's choice of its home forum."  *See Monde Re II*, 311 F.3d at 498; *see also Piper Aircraft*, 454 U.S. at 256 ("[A] foreign plaintiff's choice deserves less deference."); *Pollux*, 329 F.3d at 71-72 ("Even absent . . . forum-shopping considerations, there still is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit.").  Under the circumstances here, where foreign petitioners seek confirmation in New York of foreign arbitral awards issued in connection with a foreign commercial dispute, "little deference need be given" to Petitioners' choice of forum.  *See Monde Re II*, 311 F.3d at 499.

11

**B.**      **The Magistrate Judge Failed To Apply Controlling Second Circuit Precedent**

The second step in the *forum non conveniens* analysis asks "whether an adequate

alternative forum exists." *Pollux*, 329 F.3d at 70, 74-75.  Here there is an obvious alternative

forum—China—and the Magistrate Judge did not "dispute that China would generally constitute

an adequate alternative forum" for enforcement of an arbitral award.  *See* R&R at 10.[18]  This

should have ended the analysis, but the Magistrate Judge went on to conclude that China would

not be an adequate forum under the circumstances here, on the sole ground that the Apartment is

located in New York City.  *See id*.  Here, the Magistrate Judge's analysis runs squarely contrary

to Second Circuit precedent.

In *Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384

(2d Cir. 2011), the Second Circuit held that where, as here, a litigant seeks to "obtain a

judgement and ultimately execution" on a defendant's alleged assets, the adequacy of the

alternative forum for *forum non conveniens* purposes "depends on whether there are some assets

of the defendant in the alternate forum, *not whether the precise asset located here can be*

*executed upon there*."  *Figueiredo Ferraz*, 665 F.3d at 390-91 (emphasis added).  As the Second

Circuit explained, while "[i]t is no doubt true that only a United States court may attach a

defendant's particular assets located here," this circumstance alone "cannot render a foreign

---

[18] Indeed, China has repeatedly been found to be an adequate alternative forum for *forum non conveniens* purposes, including in the context of an action to confirm arbitral awards.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) (dispute between Chinese and Malaysian companies presented "textbook case for immediate *forum non conveniens* dismissal" where proceedings to resolve parties' dispute were underway in China); *Crescendo Mar. Co. v. Bank of Commc'ns Co.*, 15 Civ. 4481 (JFK), 2016 WL 750351, at *8 (S.D.N.Y. Feb. 22, 2016) ("China is an adequate alternative forum."); *Lu v. Air China Int'l Corp.*, No. CV 92-1254 (RR), 1992 WL 453646, at *1 (E.D.N.Y. Dec. 16, 1992) ("It plainly appears that China is an adequate available forum for the parties to litigate this case.").  Further, the share purchase agreements provided for arbitration in China, indicating that Petitioners themselves regarded China as a suitable forum for the resolution of disputes arising out of the acquisition deal.  *See* South Beauty SPA § 13.2; LDV SPA 2 § 10.2.

forum inadequate." *See id*. at 390-91 (Even the "fact that a plaintiff might recover less in an alternate forum does not render that forum inadequate.").

The Second Circuit's holding in *Figueiredo Ferraz* is directly applicable, for there is no dispute that Zhang has assets in the alternative forum, China; indeed, Petitioners themselves have alleged as much.[19]  Thus, under *Figueiredo Ferraz*, and contrary to the Magistrate Judge's R&R, the mere fact that the Apartment is located in New York City does *not* render China an inadequate alternative forum.

In finding to the contrary, the Magistrate Judge considered *Figueiredo Ferraz* to be distinguishable, observing that the "party against which attachment was sought" in the *Figueiredo Ferraz* case was a "sovereign state" (the Republic of Peru), whereas the Respondents here are "all private parties."  *See* R&R at 10.[20]  But nothing in the Second Circuit's analysis of the alternative forum question turned on the circumstance that the appellant was a sovereign state.[21]  To the contrary, the Second Circuit was articulating a principle of universal application: If the mere presence of a defendant's attachable assets in the United States could suffice to "render a foreign forum inadequate," then "every suit having the ultimate objective of executing upon assets located in this country could never be dismissed" on grounds of *forum non conveniens*.  *See Figueiredo Ferraz*, 665 F.3d at 390.  This, as the *Figueiredo Ferraz* decision reminds us, is not the law.  The second *forum non conveniens* factor thus favors dismissal here.

---

[19] *See* Feigenbaum Decl., Ex. 6 (Petition for an *Ex Parte* Order of Attachment in Aid of Arbitrations ¶ 31(xiii) (identifying, among other things, Beijing real estate among Zhang's purported assets)).  Moreover, in their petition for attachment, Petitioners emphasized that Zhang "had been ranked 310th in Forbes Magazine's China Richest List 2007, with a fortune of $240 million that had reportedly increased to $330 million by 2013."  *Id*.

[20] Tellingly, Petitioners' reply memorandum in support of confirmation did not even mention *Figueiredo Ferraz*, much less attempt to distinguish it.  *See* Petitioners' Reply Memorandum of Law in Further Support of Their Petition to Confirm Two Foreign Arbitral Awards, ECF No. 41, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071 (S.D.N.Y. Aug. 26, 2021).

[21] The only portion of the *Figueiredo Ferraz* decision that the Magistrate Judge chose to quote was addressed to the public interest factors, not to the alternative forum inquiry.  *See* R&R at 10.

### C.    The Magistrate Judge Did Not Properly Balance The Private And Public Interest Factors

Third and finally, in evaluating the propriety of dismissal under *forum non conveniens*, the court must "balance private and public interest factors to ascertain whether the case should be adjudicated in plaintiff's chosen forum or in the alternative forum proposed by defendant." *Pollux*, 329 F.3d at 74-75.  As discussed below, the Magistrate Judge failed to give proper consideration to the private interest factors and appears to have given none at all to the public interest factors.

The private interest factors address the "convenience of the litigants." *Monde Re II*, 311 F.3d at 500.  Relevant considerations include "(a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive." *Monde Re I*, 158 F.Supp.2d at 386; *see also Pollux*, 329 F.3d at 75. The Magistrate Judge's decision did not provide any real analysis of these factors; instead, the Magistrate Judge simply concluded that consideration of the arbitral awards would pose "little imposition" for the Court on the assumption that Judge Carter's *ex parte* order had already determined, in a way that binds Zhang and this Court, the ownership of the Apartment.  R&R at 10-11.  As discussed above, this is not a correct understanding of the Order of Attachment or its import.  Because resolution of this action cannot rest simply on Judge Carter's superseded *ex parte* order—and because resolution of this action may require witnesses and documentary evidence from far afield—the private interest factors support dismissal.  *See Monde Re II*, 311 F.3d at 500.

The public interest factors, altogether neglected by the Magistrate Judge, tip even more decisively in favor of dismissal.  After all, this is an action brought by foreign petitioners to

confirm foreign arbitral awards issued in a foreign proceeding arising from a foreign commercial

dispute governed by foreign law.  China has a significantly greater interest than New York in the

enforcement of arbitral awards issued in Beijing, this Court has a "legitimate interest in ensuring

that disputes with little connection to the district be litigated elsewhere," *see Monde Re I*, 158

F.Supp.2d at 387 (citation and internal quotation marks omitted), and the "public has a real

interest in seeing that limited resources are not devoted to a case having virtually no relation to

this district when an adequate alternate forum is so plainly available."  *Lu*, 1992 WL 453646, at

*3.  Absent any nexus at all to New York—or to the United States—the public interest factors

weigh heavily in favor of dismissal on grounds of *forum non conveniens*.  *See Monde Re II*, 311

F.3d at 500-01; *see also Figueiredo Ferraz*, 665 F.3d at 389-90.

### IV.   Confirmation Should Be Denied Under The New York Convention

Under Article V of the New York Convention, "[r]ecognition and enforcement" of a

foreign arbitral award "may be refused" where a party furnishes proof that the "composition of

the arbitral authority or the arbitral procedure was not in accordance with the agreement of the

parties . . . ."  New York Convention Art. V.1(d).  Here, the evidence clearly establishes that the

"composition of the arbitral authority or the arbitral procedure was not in accordance with the

agreement of the parties."  *See* Resp. Mem. at 16-19; *see also* New York Convention Art. V.1(d);

*Encyc. Universalis S.A. v. Encyc. Britannica, Inc.*, 403 F.3d 85, 90-93 (2d Cir. 2005) (affirming

denial of confirmation of arbitral award where board of arbitration "improperly composed").[22]

---

[22] The Magistrate Judge stated in her R&R that Respondents had made "no mention of the arbitral appeal that already occurred," R&R at 2, 11, but Respondents in fact cited extensively to English-language translations of the decisions that, according to Petitioners, affirmed the arbitral awards.  *See* Resp. Mem. at 16-18.

Rather than engage this argument, the Magistrate Judge deferred to the "arbitral panel" and to a decision of what she describes as the "appellate court."  R&R at 11-12.[23]  Deference to the arbitral panel was improper:  Failure to comply with the parties' agreement as to arbitral procedures or the composition of the arbitral authority is one of the express grounds for refusing to recognize or enforce a foreign arbitral award under the New York Convention, *see* New York Convention Art. V.1(d), and it would not be proper for a Court to decline review in deference to the arbitral authority itself.

Moreover, the New York Convention expressly contemplates that the courts of contracting states will apply their own particular rules and procedures in considering whether to recognize or enforce foreign arbitral awards.  *See* New York Convention Art. III; *see also Monde Re II*, 311 F.3d at 496 ("[T]he drafters of the Convention . . . contemplated that different procedural rules would be applied in the courts of the various signatory nations.").  Because the courts of contracting states have been "left free to establish different procedures for the recognition and enforcement of foreign awards," *see Monde Re II*, 311 F.3d at 496 (citation and internal quotation marks omitted, emphasis removed), deference to the findings of the Chinese court—which applied its own procedures to the question—is unwarranted here.

In concluding that deference to the "appellate court" was appropriate, the Magistrate Judge relied in particular  upon the Second Circuit's decision in *Europcar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998).  *See* R&R at 11.  However, the Magistrate Judge quoted selectively from that decision, omitting language which made clear that deference

---

[23] The Magistrate Judge's reference to an "appellate court" is most likely a reference to the Second China International Commercial Court, which, according to the Petition, affirmed the arbitral awards on appeal.  *See* R&R at 12; Pet. ¶¶ 26-28.  However, the "Civil Judgements" appended as Exhibits 8-9 to the Feigenbaum Declaration are headed "Supreme People's Court of the People's Republic of China."  *See* Feigenbaum Decl., Exs. 8 and 9; Reply Declaration of Steven B. Feigenbaum ¶¶ 12-14, ECF No. 42, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03071 (S.D.N.Y. Aug. 26, 2021).

was favored only to "proceedings in the originating country that involve *less deferential standards of review* . . . ." *Europcar Italia*, 156 F.3d at 317 (emphasis added); *see also id.* at 317-18 (instructing district courts to consider "whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review"). Nothing in the R&R, and nothing in Petitioners' papers, suggests that the Chinese court applied a less deferential standard of review.[24]

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court reject the Report & Recommendation, deny Petitioners' motion, dismiss this action in its entirety, and grant such other and further relief as this Court deems appropriate.

Dated:  New York, New York
      May 4, 2022

                                  Respectfully submitted,

                                  **BINDER & SCHWARTZ LLP**

                        By:   /s/ Eric B. Fisher
                                  Eric B. Fisher
                                  M. Tomas Murphy
                                  366 Madison Avenue, 6th Floor
                                  New York, NY 10017
                                  (212) 510-7008
                                  efisher@binderschwartz.com
                                  tmurphy@binderschwartz.com

                                  *Attorneys for Respondents Zhang Lan,*
                                  *Grand Lan Holdings Group (BVI) Limited*
                                  *and Qiao Jiang Lan Development Limited*

---

[24] In *Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd. v. Tiancheng Chempharm, Inc. USA,* 771 F. App'x 36 (2d Cir. 2019) (summary order), the other decision relied upon by the Magistrate Judge, *see* R&R at 11, the Second Circuit agreed that CIETAC's notice procedures were to be evaluated under the Due Process standards of the United States Constitution and found that those standards had been satisfied.  *See Tianjin Port Free Trade Zone*, 771 F. App'x at 37.  The Second Circuit further found that the respondent had forfeited its argument that the underlying contract was fraudulent by failing to raise that argument in the arbitration itself.  *See id.*  Neither holding supports the proposition that deference is owed to CIETAC, or to any court in China, on the question of whether the composition and procedures of the arbitral authority conformed to the parties' agreement.