USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED· 2 - 10 - 2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LA DOLCE VITA FINE DINING CO. LTD. and LA DOLCE
VITA FINE DINING GROUP HOLDINGS LTD.,

                                        Petitioners,

                -against-                                               21-cv-3071 (LAK)


ZHANG LAN, et al.,

                                        Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:

                                        Steven B. Feigenbaum
                                        Timothy J. Holland
                                        KATSKY KORINS LLP

                                        *Attorneys for Petitioners*

                                        Eric B. Fisher
                                        M. Thomas Murphy
                                        BINDER & SCHWARTZ LLP

                                        *Attorneys for Respondents*



LEWIS A. KAPLAN, *District Judge.*

                Petitioners, La Dolce Vita Fine Dining Company and La Dolce Vita Fine Dining

Group Holdings Limited, brought this action to confirm two foreign arbitral awards and an order

directing that judgment on the arbitral awards be entered in their favor and against Respondent

Zhang Lan ("Zhang").  In a Report and Recommendation dated April 20, 2022, Magistrate Judge

Jennifer Willis recommended that the arbitral awards be confirmed and judgment be entered in favor

of Petitioners.  Zhang objects to the recommendation.  She argues that Petitioners' action should be

dismissed for lack of jurisdiction and that the Court should decline to confirm the arbitral awards

pursuant to Article V of the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards (the "New York Convention").  As will appear, the awards will be confirmed.


### Background

Familiarity with Magistrate Judge Willis's Report and Recommendation (Dkt 45),

which provides a detailed account of the factual background and procedural history of this case, is

presumed. The arbitral awards at issue arose from proceedings Petitioners commenced before the

China International Economic and Trade Arbitration Commission ("CIETAC"), alleging that Zhang,

Grand Lan Holdings Group (BVI) Limited, and Qiao Jiang Lan Development Limited (collectively,

the "Arbitral Respondents") misrepresented the financial conditions of the Arbitral Respondents'

company, South Beauty Investment Company Limited, in which Petitioners owned a majority stake.[1]

In April 2019, CIETAC awarded Petitioners $142 million.[2]

The Arbitral Respondents appealed the awards to the Second China International

Commercial Court ("CICC"). While that appeal was pending, Petitioners in April 2020 moved in

---

[1]

      Dkt 1 at 7.  Unless otherwise indicated, Dkt references are to the docket in 21-cv-3071 (LAK-JW).

[2]

      *Id.* at 10 ("The combined principal amount of the [a]wards is $142,463,666.28.").

a miscellaneous proceeding in this Court for an *ex parte* order of attachment of an apartment located

in New York in aid of the arbitration proceedings. Metro Joy International LLC ("Metro Joy"), a

company incorporated in New York, holds title in the apartment. Petitioners alleged that Zhang

controls Metro Joy. In an *ex parte* order dated May 8, 2020, Judge Andrew Carter granted the

petition to attach the apartment and stated that the apartment was "currently owned or controlled by

Respondents."[3]

In May 2020, Petitioners moved to confirm the order of attachment, notice of which

was served on Zhang. Zhang did not enter an appearance or oppose the motion to confirm the

attachment order. On July 13, 2020, Judge Carter entered an order confirming the order of

attachment and "retain[ing] jurisdiction over this proceeding to allow Petitioners to move for the

turnover of the [a]partment and its contents once they obtain a final judgment in the [a]rbitrations

that has been recognized by the Southern District of New York and can be enforced in this Court."[4]

After Petitioners' arbitral awards were affirmed by the CICC, Petitioners brought this

action to confirm the awards pursuant to the New York Convention and to obtain a judgment against

Zhang limited to the equity in the apartment. Petitioners do not seek a judgment confirming the

arbitral awards in their entirety. Instead, they "seek only a judgment in an amount equal to, and

capped by, the proceeds of the sale of the [a]partment net of transaction costs and the sum of all other

---

[3]
        Docket No. 20-mc-00200 (ALC), Dkt 30 at 1.

        Unless indicated otherwise, "Respondents" refers to Metro Joy together with the Arbitral
        Respondents.

[4]
        *Id.*, Dkt 40.

liens on the [a]partment, plus the proceeds of the sale of any of the [a]partment's remaining contents."[5]

In opposition to Petitioners' motion to confirm the arbitral awards, Zhang raised the same four arguments she raised in her objection to Magistrate Judge Willis's recommendation: (1) Petitioners' action should be dismissed for lack of *quasi in rem* personal jurisdiction because Petitioners have not demonstrated that Zhang owns the apartment in New York, (2) this action should be dismissed for improper venue, (3) this action should be dismissed under the doctrine of *forum non conveniens*, and (4) the arbitral awards should not be confirmed because the arbitral procedure was not in accordance with the agreement of the parties as required under Article V of the New York Convention.

## *Discussion*

### A.    *Quasi in rem jurisdiction*

Zhang contends that this Court lacks *quasi in rem* personal jurisdiction because Petitioners have not demonstrated that Zhang owns the apartment in New York.

"Quasi in rem jurisdiction is jurisdiction over designated property that results in a judgment affecting the interests of particular individuals in designated property."[6]  It confers a court's authority to hale a defendant into court in the state where the property is located, even if the

---

[5]

Dkt 1 at 6.

[6]

*CME Media Enterprises B.V. v. Zelezny*, No. 01-cv-1733 (DC), 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001).

subject of the underlying lawsuit is unrelated to the property.[7]  Although jurisdiction based on

property typically requires satisfaction of the minimum contacts test for personal jurisdiction,[8] an

exception exists "where quasi in rem jurisdiction is used to attach property to collect a debt based

on a claim already adjudicated in a forum where there was personal jurisdiction over the defendant."[9]

Given that an arbitration panel with personal jurisdiction over Zhang already adjudicated Petitioners'

claims and concluded that Zhang (and the other Arbitral Respondents) owe Petitioners $142 million,

this Court may exercise *quasi in rem* jurisdiction without requiring the existence of minimum

contacts.

The Court's *quasi in rem* jurisdiction is dependent on Zhang's interest, if any, in the

apartment in New York.  Zhang argues that she is not an owner of the apartment because she "neither

purchased nor holds title to the [a]partment."[10]  The purchaser and title-holder, she asserts, is Metro

---

[7]

> *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) ("Considerable authority supports [the plaintiff's] position that it can enforce the award against [the defendant's] property in the forum even if that property has no relationship to the underlying controversy between the parties.").

[8]

> The minimum contacts test is used to "determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," either through a nexus between the cause of action and the forum (specific personal jurisdiction) or through the defendant's extensive contacts with the forum (general personal jurisdiction). *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[9]

> *CME Media Enterprises B.V.*, 2001 WL 1035138, at *3; *see also Shaffer v. Heitner*, 433 U.S. 186, 210 n.36 (1977) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.").

[10]

> Dkt 46 at 4.

Joy. Petitioners do not dispute that Metro Joy is the title-holder of the apartment. Instead, they

contend that Zhang "controls Metro Joy, and she paid for and had full control over the [a]paratment

. . . .," thus establishing her "effective ownership" of the apartment.[11]   They argue also that

Magistrate Judge Willis correctly determined that Zhang defaulted on the question of control or

ownership of the apartment by failing to appear in the attachment proceeding before Judge Carter,

despite having notice of Petitioners' motion to confirm the attachment order.[12]

Zhang and the other Respondents received notice of Petitioners' motion to confirm

the order of attachment, with service completed on May 21, 2020 and Respondents' opposition – if

any – due June 4, 2020.[13]   On June 11, 2020, Petitioners submitted a letter and proposed order

requesting Judge Carter to grant the motion to confirm because "Respondents, for whom no counsel

has appeared, did not default for lack of notice of this proceeding."[14]   Zhang received notice of

Petitioners' letter and proposed order and still did not enter an appearance or file any opposition.[15]

On July 13, 2020, Judge Carter entered an order confirming the order of attachment, which stated

that "Respondents, despite having received proper notice of this proceeding, have had no counsel

---

[11]

Dkt 10, Declaration of Steven B. Feigenbaum, ¶¶ 4, 19.

[12]

Dkt 48 at 6-7; Dkt 45 at 7-8.

[13]

Docket No. 20-mc-00200 (ALC), Dkt 33.

[14]

*Id.*

[15]

*Id.*, Dkt 39.

appear on their behalf and filed no opposition to the [c]onfirmation [m]otion."[16]

Petitioners did not move for a default judgment pursuant to Federal Rule of Civil Procedure 55, nor was Judge Carter's July 13, 2020 order styled as a default judgment. Nevertheless, the question remains whether I should entertain Zhang's objection to the Court's *quasi in rem* jurisdiction despite her failure to enter an appearance and make this argument in the attachment proceeding before Judge Carter.

The Second Circuit has held that "when a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment, . . . and we agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."[17] Assuming without deciding that the Second Circuit's approach in cases of default judgment applies here, I conclude that the evidence in the record demonstrates that Zhang possesses an interest in the apartment.

The apartment, located at 20 West 53rd Street, #39A, New York, NY 10019, was purchased in 2014 in Metro Joy's name.[18] Metro Joy was registered with the New York State Department of State's Division of Corporations on March 20, 2014, and it provided a Manhattan

---

[16]

    *Id.*, Dkt 40 at 3.

[17]

    *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

[18]

    Around the same time, another apartment in the same building (#21B), was purchased in the name of "Metro Joy Management LLC," and Petitioners argue that apartment also was controlled and owned by Zhang. That apartment was sold in 2020. I do not discuss apartment #21B because it is not necessary to demonstrate Zhang's interest in apartment #39A, which is at issue here.

address.[19]  The next day, Metro Joy executed a contract to purchase the apartment for $10,250,000.[20]

In the deed to the apartment, which was transferred on December 8, 2014, Metro Joy provided a New

York address of an attorney, Dylan Chan.[21]  Two weeks before the purchase was completed, Zhang

had transferred $10,725,000 to a different entity incorporated in the British Virgin Islands, called

"Metro Joy International Limited."[22]  On December 15, 2014, after Metro Joy purchased the

apartment and took out a $5.125 million mortgage on the apartment,[23] Metro Joy International

transferred $5 million to Zhang.[24]

Although this evidence does not prove directly that Zhang created and controlled

Metro Joy, communications between the real estate and insurance brokers and Zhang's agent reveal

that Zhang was considered to be the owner of the apartment.  To highlight some key examples,[25] in

a 2016 email exchange, a real estate broker hired to oversee the apartment forwarded an email thread

between her and two insurance brokers to Zhang's agent, with the email subject lines "Re: Zhang

---

[19]

Dkt 10-11.

[20]

Dkt 10, Declaration of Steven B. Feigenbaum, ¶ 21(iv).

[21]

Dkt 10-14.

[22]

Dkt 10-15.

[23]

Dkt 10, Declaration of Steven B. Feigenbaum, ¶ 21(vi).

[24]

Dkt 10-16.

[25]

For a fuller list of the examples, *see* Dkt 10, Declaration of Steven B. Feigenbaum, ¶ 22.

Lan" and "Owner is in Beijing and will wire the funds."[26] A homeowner's insurance application for

the apartment sent by the real estate broker to Zhang's agent identified the applicants as Zhang and

her son.[27]  In another correspondence, an insurance broker sent the real estate broker and Zhang's

agent an invoice for a new property insurance policy that identified Metro Joy as the insured and

Zhang and her son as Metro Joy's contact persons and provided the apartment's address under their

names.[28]  And, in August 2017, Zhang's agent emailed the real estate broker and asked her to

"change the owner's name of . . . 39A. We don't want to use it with Zhang Lan."[29]

Zhang has offered no evidence in rebuttal.  Although she attempts to poke holes in

Petitioners' proof, her arguments fail to address the email exchanges and other documents that

unambiguously demonstrate Zhang's interest in the apartment.  The fact that Zhang is not named as

a defendant in the apartment's foreclosure proceeding currently pending in the New York Supreme

Court[30] does not come close to overcoming the evidence demonstrating that Zhang has an interest

---

[26]

Dkt 10-17.

[27]

Dkt 10-19.

[28]

Dkt 10-24 at 5.

[29]

Dkt 10-29.

[30]

*Deutsche Bank Trust Companies America v. Metro Joy International, LLC et al.*, Index No. 850187/2020 (N.Y. Sup. Ct.).

Although Zhang is not named as a defendant in the foreclosure proceeding, Petitioners' submissions in the foreclosure proceeding have informed the New York Supreme Court of the pendency of this action and Zhang's role. *Id.*, Dkt 81.  As of the last docket entry in the foreclosure proceeding in May 2022, Metro Joy had not appeared in the foreclosure action, just as it did not in the attachment proceeding before Judge Carter and has not in the instant action to confirm the arbitral awards.

10

in the apartment sufficient to support the Court's *quasi in rem* jurisdiction.

B.      *Venue*

Zhang next argues that this action should be dismissed for improper venue.

Section 204 of the New York Convention provides that:

"An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States."[31]

The parties do not dispute that "the place designated in the agreement as the place of arbitration" is Beijing. Nor do they disagree that this Court has subject matter jurisdiction pursuant to Section 203, which permits district courts in the United States to confirm foreign arbitral awards.[32] Instead, their arguments focus on the first prong of Section 204, that venue is proper where "save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought."

Zhang contends that venue does not lie in this district because "[t]he underlying dispute . . . has no nexus to New York, and the parties to that dispute—all of them foreign entities or individuals—are not subject to personal jurisdiction in this Court."[33] Magistrate Judge Willis

---

[31]

9 U.S.C. § 204.

[32]

9 U.S.C. § 203.

[33]

Dkt 46 at 9.

11

rejected this argument on the ground that "several courts within this District have found that [pursuant to Section 204 of the New York Convention,] 'in the absence of an agreement to the contrary, venue is proper in any court that has subject matter jurisdiction.'"[34]

I do not agree that Section 204 makes venue coextensive with subject matter jurisdiction. Instead, Section 204 provides that an action to confirm foreign arbitral awards – as authorized under Section 203 – may be brought in any court where an action or proceeding with respect to the controversy between the parties could be brought.  Accordingly, even if a court has subject matter jurisdiction over an action to confirm foreign arbitral awards, venue in that district may not be proper if, save for the arbitration agreement, there is no action or proceeding related to the controversy that otherwise could be brought in that district.

Venue is proper in this district because an action or proceeding with respect to the controversy could be brought in this district.  Assuming without deciding that "[t]he 'controversy between the parties' . . . could not have been litigated here,"[35] Section 204 does not require for venue purposes that it be possible to litigate the underlying controversy in the chosen forum.  Instead, an "action or proceeding with respect to the controversy" between the parties may include a proceeding to attach property as pre-judgment security.  In the absence of an arbitration agreement, the parties could have litigated their dispute in China or another appropriate forum and could have brought a

---

[34]

Dkt 45 at 8 (quoting *Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD*, No. 09-cv-10393 GBD, 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011)); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, No. 12-CY-4502 (ALC), 2016 WL 5793399, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 741 F. App'x 832 (2d Cir. 2018).

[35]

Dkt 46 at 9.

proceeding to attach the apartment in New York as security for enforcement of the judgment in their

litigation pursuant to New York Civil Practice Law and Rule § 6201,[36] incorporated by Federal Rule

of Civil Procedure 64.  Such an attachment proceeding would qualify under the plain meaning of "an

action or proceeding with respect to the controversy between the parties."

       Venue accordingly is proper in this district.


C.     *Forum non conveniens*

       Zhang argues also that this action should be dismissed pursuant to the principle of

*forum non conveniens*, which establishes "that a court may resist imposition upon its jurisdiction

even when jurisdiction is authorized by the letter of a general venue statute," typically because a

foreign forum is better suited to adjudicate the action.[37]  The Second Circuit has established a three-

step process to determine whether dismissal on the ground of *forum non conveniens* is appropriate:

> "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum."[38]

---

[36]

     N.Y. C.P.L.R. § 6201 ("An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when: 1. the defendant is a nondomiciliary residing without the state . . . or 3. the defendant, with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . or 5. the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.").

[37]

     *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

[38]

     *Id.* (citations omitted).

Zhang has failed to demonstrate that this Court should dismiss this action on the basis

of *forum non conveniens*.   First, Zhang argues that Magistrate Judge Willis accorded undue

deference to Petitioners' choice of forum because they are foreign plaintiffs, and "a foreign

plaintiff's choice deserves less deference."[39]   However, as the Second Circuit has recognized, "the

more that a plaintiff, even a foreign plaintiff, chooses to sue in a United States court for 'legitimate

reasons,' the more deference must be given to that choice."[40]   Petitioners have legitimate reasons for

choosing this forum.   They believed that Zhang and the Respondents "will take steps . . . to render

the [a]wards ineffectual by secreting assets that would otherwise be available to help satisfy the

[a]wards,"[41] and brought an attachment proceeding in this forum – where some of Zhang's property

is located – to avoid further delay upon confirmation of the arbitral awards.[42]   Petitioners' choice of

forum merits deference in these circumstances.

Assuming *arguendo* that China would be an adequate alternative forum in which to

adjudicate this action, the private and public interest factors would not support dismissal.   Zhang

vaguely asserts that "resolution of this action may require witnesses and documentary evidence from

---

39

   *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

40

   *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

41

   Docket No. 20-mc-200, Dkt 11, Petition for an *Ex Parte* Order of Attachment in Aid of
   Arbitration, at 2.

42

   *Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*, No. 12-cv-6280 LAK, 2013 WL
   1245549, at *1 n.8 (S.D.N.Y. Mar. 26, 2013), *aff'd sub nom.*, 826 F.3d 634 (2d Cir. 2016)
   ("The Court credits [plaintiff's] contention that it chose this forum to expedite enforcement
   of the judgment against the assets it has reason to believe [defendant] possesses within the
   United States. This is a legitimate reason to bring the petition here.").

far afield," but she does not identify any specific evidence that would make litigating this

confirmation proceeding in this forum burdensome or inconvenient for the parties. Indeed, it would

be rare for such evidence to be used in an action to confirm an arbitration award, which generally

is a summary proceeding.[43] Moreover, to the extent that Zhang wished to introduce evidence to rebut

Petitioners' proof regarding her interest in the apartment in New York, Zhang has had ample

opportunities to do so in this proceeding (and for that matter, in the attachment proceeding

previously before Judge Carter).

The public interest factors also weigh in favor of accepting jurisdiction. Although

China may have a stronger connection to the underlying dispute between the parties, "the Second

Circuit has recognized that confirmation of international arbitration awards falling under the New

York Convention is a 'favored policy' of the United States—a public interest that weighs here

heavily in favor of accepting jurisdiction."[44]

Dismissal on the basis of *forum non conveniens* therefore would be unwarranted.

D.    *Article V of the New York Convention*

Zhang's final argument is that this Court should decline to confirm the arbitral awards

because the "composition of the arbitral authority or the arbitral procedure was not in accordance

---

43

> *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005).

44

> *Leeward Const. Co.*, 2013 WL 1245549, at *1 n.8 (quoting *Figueiredo Ferraz E Engharia de Projeta Ltda. v. Peru*, 665 F.3d 384, 389–90, 392 (2d Cir.2011)).

with the agreement of the parties."[45]   Failure to comply with the parties' agreement in the composition of the arbitral authority is one of the seven grounds identified in Article V of the New York Convention to deny confirmation of foreign arbitral awards.[46]

The crux of Zhang's objection is that CIETAC failed to appoint all three arbitrators as required under Article 27(3) of the 2012 CIETAC Rules.[47] Zhang made the same argument to the CIETAC arbitral panel and on appeal to the CICC (the Beijing court), which rejected Zhang's argument. Magistrate Judge Willis deferred to the decisions of the arbitral panel and the Beijing court, and rejected Zhang's argument on that ground. Zhang argues that Magistrate Judge Willis improperly deferred to the arbitral panel because "deference [is] favored only to 'proceedings in the originating country that involve *less deferential standards of review*.'"[48]

Zhang points out that there is nothing to suggest that the Beijing court applied a less deferential standard of review. But she has not provided any evidence or authority with respect to the standard of review applied by the Beijing court. In any case, and regardless of the level of

---

[45]

New York Convention, art. V(1)(d), June 10, 1958.

[46]

*Id.*

[47]

Dkt 39 at 17.

[48]

Dkt 46 at 17 (emphasis in original) (quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998)).

The full quote in *Europcar Italia, S.p.A.* is: "The limited scope of review allowed under the [New York] Convention also favors deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award." 156 F.3d at 317.

16

deference, if any, I accord to the arbitral panel and the Beijing court, Zhang would not have satisfied

her burden of furnishing proof that the composition of the arbitral authority was not in accordance

with the agreement of the parties.[49]   Zhang has offered no evidence to rebut the Beijing court's

findings that the CIETAC rule that required CIETAC to appoint all three members of the arbitral

tribunal does not apply "[w]hen one side does not exercise the[] right [to nominate one of the three

arbitrators] for any reason – as Zhang and the corporate respondents declined to do" and that Zhang

acted in bad faith by refusing jointly to nominate an arbitrator on behalf of the Arbitral Respondents

despite having been "authori[z]ed to act on all [Arbitral Respondents'] behalf throughout the

arbitrations."[50]

Zhang therefore has failed to meet her burden to deny confirmation of the arbitral

awards pursuant to Article V of the New York Convention. I have considered Zhang's other

arguments and found them all unpersuasive.

---

[49]

> *Europcar Italia, S.p.A.*, 156 F.3d at 313 ("The party opposing enforcement has the burden
> of proving the existence of one of these enumerated defenses.").

[50]

> Dkt 48 at 18.

### Conclusion

For the reasons stated, Zhang's objections are overruled. The petition to confirm the arbitration awards is granted.  Petitioners shall settle judgment on or before February 24, 2023 on two business days notice.

SO ORDERED.

Dated:        February 10, 2023

/s/        Lewis A. Kaplan

_____

Lewis A. Kaplan
United States District Judge